**1822-CC10769**

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

ANHEUSER BUSCH EMPLOYEE CREDIT
UNION,

                     Plaintiff,

vs.

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

Serve at:
CSC-Lawyers Incorporating Service Co.
221 Bolivar Street
Jefferson City, Missouri 65101

AND

THE CHARTER OAK FIRE INSURANCE
COMPANY,

Serve at:
CSC-Lawyers Incorporating Service Co.
221 Bolivar Street
Jefferson City, Missouri 65101

                     Defendants.

Case No.

Division:

## PETITION

       Plaintiff Anheuser Busch Employee Credit Union ("ABECU"), by and through its

counsel David E. Larson of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P, files this Petition

against The Charter Oak Fire Insurance Company and Travelers Property Casualty Company of

America (jointly "Travelers"), stating its claims as follows:

### Statement of Case

   1.  This is an action seeking judgment against Travelers for its bad faith breach of its duty to

defend and indemnify ABECU pursuant to the policy of insurance issued by Travelers.

1

Exhibit 1

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

## Allegations Common to All Claims

### Parties

2.   ABECU is organized as a credit union and exists under the laws of the State of Missouri with its principal place of business at 1001 Lynch Street, St. Louis, Missouri 63118.

3.   Travelers Property Casualty Company of America is a foreign corporation in good standing, registered to do business in the State of Missouri, with offices and agents in the City of St. Louis for the purpose of conducting the usual and customary business of Travelers.

4.   The Charter Oak Fire Insurance Company is a foreign corporation in good standing, registered to do business in the State of Missouri, with offices and agents in the City of St. Louis for the purpose of conducting the usual and customary business of Charter Oak.

### Jurisdiction and Venue

5.   Venue is proper in this Court pursuant to Mo. Rev. Stat. 508.010.

6.   The court has personal jurisdiction over Travelers.

7.   ABECU's claims against Travelers exceed $25,000 in value.

*ABECU's insurance policy from Travelers*

8.   ABECU purchased and Travelers issued Commercial General Liability ("CGL") and Umbrella policies to ABECU on a yearly basis with policy periods of April 1, 2014 – April 1, 2015; April 1, 2015 – April 1, 2016, and April 1, 2016 – April 1, 2017 and Policy Nos. H-630-3E389749-COF-16; HASM-CUP-3E389749-TIL-16; H-630-3E389749-COF-15; HASM-CUP-3E389749-TIL-15; H-630-3E389749-COF-14; HASM-CUP-3E389749-TIL-14 (collectively "the policy").

9.   Each policy period included a $2 million limit of liability for coverage under the CGL and an additional $5 million in coverage under the Umbrella.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

10. In the policy, Travelers agreed to "pay those sums that [ABECU] becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applied." Travelers also agreed that it "will have the right and duty to defend [ABECU] against any 'suit' seeking those damages."

11. In the policy, Travelers agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies. Travelers also agreed that it "will have the right and duty to defend the insured against any 'suit' seeking those damages.

12. The CGL policy provides insurance coverage for "personal and advertising injury." In relevant part, the CGL policy defines "personal and advertising injury" to include "oral or written publication, in any manner, of material that slanders or libels a person...." The term is defined almost identically in the Umbrella policy.

13. Coverage under the "personal and advertising injury" section requires allegations against the insured of oral or written publication of false material that slanders or libels.

14. The term "publication" is not defined in the policy.

15. The CGL policy also provides insurance coverage for "property damage" if it is caused by an "occurrence" that takes place in the "coverage territory."

16. The policy defines "property damage" as including "loss of use of tangible property that is not physically injured."

***Facts giving rise to class action claims against ABECU***

17. On July 29, 2015, ABECU filed suit against Daniel P. Wells ("Wells") seeking a deficiency judgment for a 2010 Toyota Corolla which ABECU had previously repossessed and sold at auction.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

18. Default judgment was entered against Wells in the amount of $6,000.00 on August 27, 2015.

19. A motion to set aside the default judgment was filed on March 4, 2016, which the court granted on March 22, 2016.

20. Wells then filed an answer and counterclaim on March 14, 2016, which was thereafter amended on May 5, 2016, to assert class action claims against ABECU on behalf of a nationwide class and a Missouri sub-class of similarly situated claimants. A true and correct copy of the First Amended Answer and Counterclaim, Case No. 1522-AC09263-01, filed in the Circuit Court of the City of St. Louis, is attached hereto and incorporated herein by reference as Exhibit 1.

21. The counterclaim alleges that ABECU failed to strictly comply with the Uniform Commercial Code ("UCC") and alleges an unlawful pattern of wrongdoing with respect to the disposition of collateral by ABECU.

22. The counterclaim also alleges that ABECU wrongfully accelerated consumer credit contracts on loans made to Wells and other consumers and wrongfully repossessed their collateral because it either failed to send the Right to Cure notice required by the UCC and section 408.554 of the Missouri Revised Statutes or sent defective Right to Cure Notices before repossession.

23. Additionally, the counterclaim alleges that ABECU sent Wells and other consumers pre-sale notices which did not comply with the UCC.

24. The suit further alleged that when ABECU failed to include required information in the notices relating to redemption and sale of repossessed vehicles, the class members lost the use of their vehicles and were precluded from reclaiming their collateral before it was sold.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

25. The counterclaim also sought damages for defamation (slander and libel) plus invasion of privacy, harm to credit worthiness, standing, capacity, character, and reputation.

26. The counterclaim alleged that ABECU published false, defamatory statements in its attempt to collect a debt. Specifically, the suit alleged that ABECU reported derogatory information regarding the class members to local consumer reporting agencies and the three national consumer credit reporting agencies.

27. Further, by sending the defective right to cure, presale and post-sale notices, and reporting false or inaccurate derogatory information on the class members' credit reports, the class members suffered harm to their credit worthiness, credit standing, credit capacity, character, and general reputation.

28. The counterclaim sought class certification, actual and statutory damages, prejudgment and post-judgment interest, punitive damages, costs and fees.

29. There were no allegations in the counterclaim that ABECU knowingly violated the UCC's notice provision, knowingly sent out defective notices, or knowingly reported false information to credit agencies as part of its collection efforts.

30. The counterclaims against ABECU derive from acts that were negligently committed by ABECU.

31. While no reply was required for a general denial of the affirmative allegations made in the counterclaim, the firm that ABECU hired to file the Wells collection action, Riezman Berger, P.C., did not file a reply to the class action counterclaim.

32. The failure to file a reply resulted in a waiver of any affirmative defenses that ABECU may have otherwise asserted, such as the statute of limitations. However, the loss of these defenses did not relieve Travelers of its duty to defend and indemnify ABECU; nor was

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Travelers prejudiced by the loss of ABECU's affirmative defenses not covered by the general denial.

***Travelers' denial of coverage and obligation to defend ABECU***

33. Notice of the counterclaim was first provided to Travelers on September 29, 2017.

34. ABECU made demand on Travelers to defend the counterclaims and indemnify ABECU from any resultant damages.

35. On November 10, 2017, Travelers issued an initial reservation of rights letter which accepted the duty to defend but denied coverage for the duty to indemnify.

36. However, Travelers has refused to provide a defense or reimburse ABECU for its defense costs and continues to deny coverage for its contractual share of the settlement entered into by ABECU in the Wells class action. Travelers' failure to satisfy its contractual obligations was unreasonable and constituted a bad faith denial of coverage.

37. Travelers' refusal to defend and indemnify ABECU was vexatious and without reasonable cause.

38. Under Missouri law, Travelers should be limited to the coverage defenses raised in its November 10, 2017 denial letter. A true and correct copy of the Travelers' November 10, 2017 denial letter is attached and incorporated as Exhibit 2.

39. The class claimants claimed damages based on or equivalent to the amounts calculable under UCC § 9-625(c), in an amount that exceeded ABECU's policy limits.

40. The class claimants also sought discharge of deficiency amounts owed on the obligations to ABECU that exceeded ABECU's policy limits.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

41. Because Travelers denied coverage, ABECU was forced to pay for its own defense of the Wells class action.  ABECU was faced with the burden of paying the litigation expenses to defend itself through trial.

42. Additionally, ABECU recognized its considerable financial exposure to the damages sought by the class claimants, and it knew that Travelers refused to indemnify it for those alleged damages.

43. As a direct result of the litigation expenses already incurred, the additional defense costs anticipated through trial, and the exposure ABECU faced from the class action claims, ABECU elected to engage in settlement discussions with the class claimants.

44. After multiple mediations, a settlement agreement was reached between ABECU and the class claimants.

45. The proposed settlement relies upon ABECU's payment of a settlement amount to be distributed among class members based on the amount of their UCC § 9-625 damage calculations in addition to the forgiveness of loan deficiency amounts owed to ABECU by the class claimants.

46. The settlement received final court approval on July 10, 2018, which includes findings defining the class to which the settlement applies.

47. Despite the settlement, there may be additional borrowers whose potential claims are not resolved by the settlement.  Accordingly, these additional borrowers could still bring claims against ABECU.

48. On May 29, 2018, ABECU again demanded that Travelers defend and indemnify it to the full extent of its contractual obligations. Again, Travelers refused. Travelers' refusal was without reasonable cause or excuse.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

## Count I – Breach of Contract

49. Plaintiff incorporates Paragraphs 1 through 52 above as if fully set forth herein.

50. Travelers issued insurance policies to ABECU for the policy periods of April 1, 2014 – April 1, 2015; April 1, 2015 – April 1, 2016, and April 1, 2016 – April 1, 2017.

51. ABECU paid the insurance premiums to Travelers for each respective policy period.

52. The policy required Travelers to defend and indemnify ABECU for the claims made by the counterclaim class plaintiffs under the policy's coverages for "personal and advertising injury" and "property damage."

53. The counterclaims asserted claims for damages for "personal and advertising injury" and "property damage" against ABECU.

54. ABECU demanded that Travelers defend and indemnify it under the policy.

55. Travelers indicated that it would provide a defense to ABECU but failed to do so.  And, Travelers failed to indemnify ABECU, affirmatively denying coverage to ABECU for the same.

56. Travelers failure to defend and indemnify ABECU on the claims in question constituted a breach of contract.

57. Travelers is liable to ABECU for attorneys' fees and costs incurred in defending the Wells Litigation, for attorney's fees and costs incurred in its pursuit of coverage against Travelers, and for monetary damages and forfeited deficiencies attributable to Travelers' policy years.

WHEREFORE, ABECU prays for judgment against Travelers and Charter Oak for damages in excess of $25,000, plus interest, costs, attorney's fees and penalties for the breach of contract and any other or further relief as the Court deems just and equitable.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

## Count II – Bad Faith Refusal to Defend and Indemnify

58. Plaintiff incorporates Paragraphs 1 through 60 above as if fully set forth herein.

59. Missouri law, and in particular Mo. Rev. Stat. §§375.296 and 375.420, imposes liability upon insurance carriers if the carrier has failed or refused for a period of 30 days after due demand therefor prior to the institution of the action, to make payment under in accordance with the terms and provisions of the contract of insurance. The law further provides, *inter alia*, that if the refusal to pay was vexatious and without reasonable cause, the carrier is liable for attorney's fees and may be liable for additional penalties.

60. Travelers issued or delivered in Missouri an insurance contract to ABECU.

61. ABECU made demand upon Travelers to defend and indemnify it under and in accordance with the terms and provision of the contract of insurance.

62. The demand was made upon Travelers more than 30 days before the filing of this action.

63. Travelers failed and refused to defend, indemnify, or otherwise pay ABECU.

64. Travelers failure and refusal was vexatious and without reasonable cause.

WHEREFORE, ABECU prays for judgment against Travelers and Charter Oak for damages in excess of $25,000, plus interest, costs, attorney's fees and penalties pursuant to Mo. Rev. Stat. 375.296 and Mo. Rev. Stat. 375.420 and any other or further relief as the Court deems just and equitable.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Respectfully submitted:

MARTIN, PRINGLE, OLIVER,
   WALLACE & BAUER, L.L.P.


By: _/s/ David E. Larson_____
David E. Larson, MO #27146
One Main Plaza
4435 Main Street, Suite 920
Kansas City, MO 64111
(816) 753-6006
(816) 502-7898 fax
delarson@martinpringle.com
*Attorney for Plaintiff*

**1822-CC10769**

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

**TWENTY-SECOND JUDICIAL CIRCUIT COURT**
**ST. LOUIS CITY, MISSOURI**

Anheuser-Busch Employees'
Credit Union,

  Plaintiff/Counterclaim-Defendant,

v.

Daniel P. Wells,

  Defendant/Counterclaimant.

Case No. 1522-AC09263-01
Division: 27

### First Amended Answer and Counterclaim

Defendant/Counterclaimant Daniel P. Wells ("Defendant" or "Wells"), through the undersigned attorneys, answers Plaintiff's Petition and counterclaims against Plaintiff:

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5.  The contract speaks for itself, so Defendant denies the allegations of this Paragraph.

6.  Plaintiff's Petition omits this Paragraph, so no response is required. If a response is required, the allegations of this Paragraph are denied.

7.  Defendant admits Plaintiff repossessed the vehicle, but states the remaining allegations of this Paragraph are legal conclusions to which no response is required. If a response is required, Plaintiff denies the remaining allegations of this Paragraph.

8.  Defendant admits Exhibit 2 is Plaintiff's presale notice addressed to Defendant and that he did not pay the amount indicated, but is without knowledge sufficient to admit or deny the

1

**EXHIBIT**
**1**

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

truth or falsity of whether Plaintiff sent the notice, and therefore denies same. Defendant denies the remaining allegations of this Paragraph.

9.      Defendant admits Exhibit 3 is Plaintiff's post-sale notice addressed to Defendant, but is without knowledge sufficient to admit or deny the truth or falsity of the remaining allegations of this Paragraph, and therefore denies same.

10.     Denied.

11.     Defendant incorporates his answers to Paragraphs 1 and 2 as if set forth in this Paragraph.

12.     Defendant is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore denies same.

13.     Defendant is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore denies same.

14.     Defendant is without knowledge sufficient to admit or deny the truth or falsity of the allegations in this Paragraph, and therefore denies same.

15.     Denied.

16.     Denied.

17.     Denied.

18.     Admitted.

WHEREFORE, having fully answered Plaintiff's Petition, Defendant prays for an order dismissing all claims against Defendant with prejudice and costs expended taxed to Plaintiff; and awarding all other relief as the Court deems just or necessary under the circumstances.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

## Affirmative Defenses

1.      Plaintiff's Petition fails to state a claim upon which relief can be granted because Plaintiff has failed to plead facts sufficient to show compliance with sections 400.9-601 to 400.9-629, RSMo., as required by sections 408.556.1 and 408.557, RSMo.

2.      Plaintiff's Petition is barred by the absolute bar rule because Plaintiff did not strictly comply with the Uniform Commercial Code, including sections 400.9-601 to 400.9-629, RSMo., as set forth in the counterclaim below, which is incorporated by this reference.

3.      Count II of Plaintiff's Petition is barred by set-off due to the counterclaim below, which is incorporated by this reference.

---

## Counterclaim
### Nature of Case

1.      This is a consumer class action against Anheuser-Busch Employees' Credit Union ("AB Credit Union"), and its predecessors or successors, seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by AB Credit Union regarding collection (including collection of alleged deficiencies), enforcement, repossession and disposition of collateral.

2.      AB Credit Union wrongfully accelerated consumer credit contracts on loans made to Wells and many other Missouri consumers and wrongfully repossessed their collateral because AB Credit Union either failed to send the right to cure notice required by RSMo § 408.554 ("Right to Cure Notices") or sent defective Right to Cure Notices before repossession.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

3.      AB Credit Union sent Wells and many other consumers a presale notice, which did not comply with the Uniform Commercial Code ("UCC") adopted by each state.[1] The presale notice sent to Wells is attached as **Exhibit 2** to Plaintiff's Petition ("Presale Notice").

4.      AB Credit Union sent Wells and numerous other consumers a post-sale notice, which did not comply with the UCC. The post-sale notice sent to Wells is attached as **Exhibit 3** to Plaintiff's Petition ("Post-sale Notice").

5.      Wells sues for himself and all other similarly situated consumers. They seek actual damages not less than the statutory minimum provided for under the UCC, and such other further relief as this Court may deem appropriate.

## Parties

1.      Wells is a resident of St. Louis City, Missouri.

2.      AB Credit Union is a Missouri chartered credit union that does business in St. Louis City, Missouri. American Eagle Credit Union is a division of AB Credit Union and AB Credit Union sometimes does business as American Eagle Credit Union.

3.      References to AB Credit Union include Anheuser-Busch Employees' Credit Union, American Eagle Credit Union, their predecessors, successors, and any entity, person or name under which AB Credit Union does business.

4.      AB Credit Union is engaged in the business of personal finance.

5.      All allegations of acts or omissions by AB Credit Union include, but are not limited to, acts and omissions of AB Credit Union's officers, directors, operators, managers, supervisors,

---

[1]      Wells cite to the sections of the official text of the UCC. The sections of the UCC cited by Wells have been adopted by all 50 states with no material variation that would affect the claims of the putative class members, regardless of where the putative class member resides, the loan originated, or the repossession took place. Article 9 of the UCC has been adopted in Missouri at § 400.9-101, *et seq*. Missouri's statutory scheme for its version of the UCC adds the prefix of 400 to the UCC numbering scheme. For example, § 9-614 of the UCC is denominated § 400.9-614 in Missouri's statutes.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners; and that such acts and omissions were made with AB Credit Union's express and/or implied authority, or were ratified or otherwise approved by AB Credit Union; or that such acts or omissions were made in the routine normal course and scope of their agency and employment as AB Credit Union's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice-principals, partners, agents, servants, and owners.

### Jurisdiction and Venue

6.      This matter is a civil matter, so this Court has jurisdiction.

7.      Venue is proper in this Court under § 508.010 because Wells is a resident of St. Louis City, Missouri. Venue is also proper in this Court under Rule 55.32 because Wells is counterclaiming on AB Credit Union's Petition originally brought in this Court.

### General Allegations

8.      Wells signed a consumer credit contract for the purchase of a 2010 Toyota Corolla ("Property").

9.      The Property was bought for use primarily for personal, family or household purposes.

10.     The consumer credit contract was for the sale of a motor vehicle by a retail seller to a retail buyer on time under a retail installment contract for a time sale price payable in one or more deferred installments

11.     Wells and each class member were debtors or obligors in a consumer-goods transaction as those terms are defined under the UCC.

12.     AB Credit Union accelerated the balance due on Wells' consumer credit contract without giving the required Right to Cure Notices.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

13.     AB Credit Union or someone at AB Credit Union's direction repossessed the Property without giving the required Right to Cure Notices.

14.     AB Credit Union never obtained Wells' written consent to repossess the Property.

15.     AB Credit Union never obtained the written consent from the members of the Missouri Subclass (defined below) to repossess their property.

16.     Wells did not voluntarily surrender the Property.

17.     The members of the Missouri Subclass did not voluntarily surrender their property.

18.     Under RSMo § 408.555, AB Credit Union wrongfully accelerated Wells' and the Missouri Subclass's consumer credit contracts by failing to give the required Right to Cure Notices before acceleration.

19.     Under RSMo § 408.555, AB Credit Union wrongfully repossessed Wells' and the Missouri Subclass's property by failing to give the required Right to Cure Notices before repossession.

20.     After repossessing the Property, AB Credit Union or someone at AB Credit Union's direction sent the Presale Notice to Wells, advising of AB Credit Union's intent to dispose of the Property in purported compliance with the UCC.

21.     The Presale Notice sent to Wells and the presale notices sent to the Class (defined below) were not reasonable as required by § 9-611(b) for one or all of the following reasons:

    a.   The presale notice misstated the intended method of disposition required by sections 400.9-614(1)(A) and 400.9-613(1)(C).

    b.   The presale notice failed to state the debtor is entitled to an accounting of the unpaid indebtedness and state the charge, if any, for an accounting as required by sections 400.9-614(1)(A) and 400.9-613(1)(D).

6

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

c.   The presale notice misstated the date of sale.

d.   The presale notice failed to provide a description of any liability for a deficiency of the person to which the notification is sent as required by sections 400.9-614(1)(B).

e.   The presale notice failed to provide a telephone number from which the amount that must be paid to the secured party to redeem the collateral under section 400.9-623 is available as required by sections 400.9-614(1)(C).

f.   The presale notice failed to provide a telephone number or mailing address from which additional information concerning the disposition and the obligation secured is available as required by sections 400.9-614(1)(D).

g.   The presale notice failed to notify the debtor of his right to obtain additional information concerning the disposition and the obligation secured as required by sections 400.9-614(1)(D).

h.   The presale notice misstated that in order for debtor to redeem the debtor had to have all other accounts with AB Credit Union in good standing.

22.   The Presale Notice sent to Wells and the presale notices sent to the Missouri Subclass were not reasonable as required by section 400.9-611(b) for the additional reasons that they were misleading or otherwise unreasonable for one or all of the following reasons:

a.   The presale notice misstated the payoff balance by including wrongfully accelerated amounts.

b.   The presale notice misstated that the payoff balance would accrue interest from the date of the notice until redemption or sale.

c.   The presale notice misstated that in order for debtor to redeem the debtor had to have all other accounts with AB Credit Union in good standing.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

    d.   The presale notice misstated that for the debtor to redeem the collateral the debtor had to pay the payoff balance and repossession costs.

    e.   Wells and the Missouri Subclass were not responsible for a deficiency if the payoff balance on the consumer credit contract plus costs allowed was greater than the proceeds from the sale of the property because the payoff balance would have wrongfully included accelerated amounts, improper interest and the property was wrongfully repossessed.

23.    AB Credit Union failed to send Wells and the Class reasonable authenticated notices of disposition as required by § 9-611.

24.    AB Credit Union or someone at AB Credit Union's direction disposed of the Property ("Disposition") after sending the Presale Notice.

25.    After Disposition, AB Credit Union or someone at AB Credit Union's direction sent Wells the Post-sale Notice and post-sale notices to each member of the Class explaining how it calculated their deficiency balances.

26.    AB Credit Union's post-sale notices to Wells and the Class failed to comply with § 9-616 because the notices:

    a.   Did not provide all the information, in the requisite order, as required by § 400.9-616(c)(3).

    b.   Did not state future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses may affect the amount of the surplus or deficiency, as required by § 400.9-616(a)(1)(C).

    c.   Misstated how the collateral was sold.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

27.     The post-sale notices sent to Wells and the Missouri Subclass violate section § 9-616 because:

     a.     The post-sale notices misstated the aggregate amount of obligation (as required by RSMo § 400.9-616(c)(1)) and the amount of the deficiency (as required by RSMo §§ 400.9-616(a)(1)(A), (c)(6)) by including unpaid balances and interest that had not become due.

     b.     The post-sale notices misstated other amounts for expenses and credits.

     c.     The post-sale notices were otherwise misleading.

28.     Future debits, credits, charges, including additional credit service charges or interest, rebates, and expenses affected the amount of the surplus or deficiency for Wells and the Class.

29.     AB Credit Union's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance.

30.     AB Credit Union sued Wells and the Missouri Subclass without giving the notice required by RSMo § 408.557.

31.     AB Credit Union's deficiency actions against Wells and the Class sought interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

32.     AB Credit Union's deficiency judgments against Wells and the Class included interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

33.   AB Credit Union or someone at AB Credit Union's direction has unlawfully collected or attempted to collect interest accruing after default and before judgment from Wells and Missouri consumers.

34.   AB Credit Union or someone at AB Credit Union's direction has unlawfully collected or attempted to collect deficiency balances from Wells and other consumers issued defective right to cure, presale and post-sale notices.

35.   AB Credit Union or someone at AB Credit Union's direction has unlawfully collected or attempted to collect the time price differential, delinquency and collection charges from Wells and other Missouri consumers issued defective right to cure, presale and post-sale notices.

36.   AB Credit Union has maintained a practice and policy of reporting derogatory information regarding the class members to local consumer reporting agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collectively, "CRAs"), despite its failure to comply with the right to cure, presale and post-sale notice requirements.

37.   The defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation.

38.   The defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

39.     The defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the class members' privacy rights.

### Class Allegations

40.     Wells counterclaims for himself and classes designated under Rules 52.08(a) and 52.08(b)(3) to remedy the ongoing unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

41.     The Class comprises all persons ("Class"):

a.   who are named as borrowers or buyers on a loan or financing agreement with AB Credit Union, assigned to AB Credit Union or owned by AB Credit Union;

b.   whose loan or financing agreement was secured by collateral;

c.   whose collateral was repossessed; and

d.   whose collateral was disposed.

42.     The Missouri Subclass comprises all persons within the Class ("Missouri Subclass"):

a.   who obtained a Missouri Certificate of Title for a motor vehicle identifying AB Credit Union as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with AB Credit Union, assigned to AB Credit Union or owned by AB Credit Union;

b.   whose loan or financing agreement was secured by a motor vehicle or other collateral;

c.   whose motor vehicle or other collateral was repossessed; and

d.   whose motor vehicle or other collateral was disposed.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

43.     Members of the classes are so numerous their individual joinder is impracticable. Wells is informed and believes the proposed classes each contain over 300 individuals who had their motor vehicles or other collateral repossessed and disposed. The classes are sufficiently numerous to make joinder impracticable, if not impossible. The precise number of Class members is unknown.

44.     There are questions of law and fact common to the classes, which predominate over any issues involving individual class members.

45.     The principal legal question common to Wells and each class member is whether the presale and post-sale notices sent by AB Credit Union, or someone at its direction, complied with the UCC.

46.     The principal legal question common to Wells and each Missouri Subclass member is whether RSMo § 408.553 precludes interest from accruing after default until a judgment is obtained, and if so, whether the presale and post-sale notices are defective by including or discussing interest AB Credit Union was precluded from charging.

47.     Wells' claims are typical of the claims of the class members.

48.     Wells' and the classes' claims are based on the same factual and legal theories.

49.     Wells' and the Class's rights derive from written, form contracts and a uniform statute adopted by all 50 states.

50.     The violations alleged by Wells and the Class derive from written, form presale and post-sale notices that violate the UCC adopted by each state.

51.     The violations alleged by Wells and the Missouri Subclass derive from written, form right to cure, presale and post-sale notices that violate RSMo §§ 408.553, 408.554, 408.555 and the UCC.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

52.     Wells and each class member were damaged and may recover actual damages not less than the minimum damages provided by the UCC due to AB Credit Union's failure to provide proper presale notices and post-sale notices.

53.     Wells will fairly and adequately represent and protect the interests of the classes.

54.     Wells has no interests antagonistic to the class members.

55.     Wells' counsel is competent and experienced in consumer and class litigation.

56.     Wells and all class members have an interest in determining the adequacy of the presale notices and post-sale notices sent by AB Credit Union and to recover damages due to the statutorily defective presale notices and post-sale notices.

57.     The questions of law or fact common to the classes predominate over questions affecting only individual members.

58.     Wells and each class member will rely on the same basic evidence (i.e., the form presale notices and post-sale notices).

59.     Determining the deficiency of the presale notices and post-sale notices resolves all class members' claims because each notice sent to the class members suffers from at least one of the same deficiencies as Wells' notices.

60.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

61.     The class members are consumer debtors, who likely cannot locate or afford to hire lawyers.

62.     Most class members are probably unaware AB Credit Union violated their rights and the law.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

63.     If each of the class members were forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

64.     Concentrating the litigation of Wells' and the class members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

65.     The classes should be certified under Rule 52.08(b)(3), as the superior method for the fair and efficient adjudication of this controversy.

66.     Wells also seeks a declaration that the form right to cure notices, presale notices and post-sale notices used by AB Credit Union violate Missouri or other applicable law.

**Count I – Class's Claim**

67.     Wells repeats the allegations set forth above as if set forth in Count I.

68.     AB Credit Union violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by AB Credit Union.

69.     AB Credit Union did not use the form of notification provided in § 9-614(3) of the UCC when sending presale notices to Wells and the Class.

70.     AB Credit Union's presale notice to Wells and the Class included additional language or content not authorized or allowed by law, rendering the presale notices misleading or unreasonable in violation of §§ 9-611 and 9-614 of the UCC.

71.     As required under § 9-611 of the UCC, AB Credit Union failed to provide "reasonable authenticated notice of disposition" to Wells and the Class.

72.     AB Credit Union did not send post-sale notices, or any other explanation or writing, to Wells and the Class providing all the information, in the requisite order, as required by § 9-616 of the UCC.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

73.    AB Credit Union's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because AB Credit Union sent the same noncompliant post-sale notice to Wells and the Class.

74.    As a direct and proximate result of failure to comply with the requirements of Subchapter 6 of Article 9 of the UCC, Wells and the Class suffered actual damages not less than the minimum damages provided by § 9-625(c)(2), including:

   a.  loss of use of tangible property and cost of alternative transportation;

   b.  loss resulting from the inability to obtain, or increased costs of, alternative financing;

   c.  harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

   d.  harm caused by defamation, slander and libel;

   e.  harm caused by invasion of privacy; and

   f.  other uncertain and hard-to-quantify actual damages.

WHEREFORE, Wells prays this Court certify the Class and enter a judgment for Wells and the Class against AB Credit Union:

   a.  awarding actual damages not less than the minimum damages provided by § 9-625(c)(2);

   b.  statutory damages of $500 for each defective post-sale notice sent or that AB Credit Union failed to send;

   c.  prejudgment and post-judgment interest;

   d.  a preliminary and permanent injunction enjoining AB Credit Union from engaging in the practices alleged, including without limitation, enjoining AB Credit Union from

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

collecting deficiency judgments, time price differential, delinquency and collection charges from Wells and the Class;

e.  a mandatory injunction compelling AB Credit Union to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Wells and the Class;

f.  a mandatory injunction compelling AB Credit Union to remove any adverse credit information wrongfully reported on Wells' and the Class' consumer credit reports;

g.  a declaration that the presale and post-sale notices sent by AB Credit Union to Wells and the Class fail to comport with the statutory requirements; and

h.  for such other and further relief as this Court deems just and proper.

## Count II – Missouri Subclass' Claim

75.     Wells repeats the allegations set forth above as if set forth in Count II.

76.     RSMo § 408.555 prohibits AB Credit Union from accelerating the maturity of the unpaid balance, taking possession of the collateral or otherwise enforcing its security interest until the notice required by RSMo § 408.554 is given.

77.     AB Credit Union failed to give Wells and the Missouri Subclass the notice required by RSMo § 408.554 before it accelerated the maturity of the unpaid balances under the consumer credit contracts.

78.     AB Credit Union failed to give Wells and the Missouri Subclass the notice required by RSMo § 408.554 before it repossessed the collateral secured by the consumer credit contracts.

79.     AB Credit Union wrongfully accelerated the maturity of the unpaid balances under the consumer credit contracts.

80.     AB Credit Union wrongfully repossessed the collateral secured by the consumer credit contracts and caused Wells and the Missouri Subclass the loss of use of tangible property.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

81.     AB Credit Union's failure to provide a notice sufficient under RSMo §§ 408.554 and 408.555 before acceleration and repossession violates RSMo § 365.145.

82.     AB Credit Union's wrongful acceleration of the maturity of the unpaid balances under the consumer credit contracts and wrongful repossession of the collateral secured by the consumer credit contracts renders the presale notices unreasonable and misleading in violation of RSMo §§ 400.9-611 and 9-614(5), (6) because, among other reasons, it misstates the payoff balance and the consumer's redemption rights.

83.     AB Credit Union's wrongful acceleration of the maturity of the unpaid balances under the consumer credit contracts and wrongful repossession of the collateral secured by the consumer credit contracts renders the post-sale notices unreasonable and misleading in violation of RSMo § 400.9-616 because, among other reasons, it misstates the amount of the obligation and the deficiency balances owed by including unpaid balances that had not become due.

84.     AB Credit Union did not send post-sale notices, or any other explanation or writing, to Wells and the Missouri Subclass providing all the information, in the requisite order, as required by RSMo § 400.9-616.

85.     AB Credit Union's failure to provide a statutorily compliant post-sale notice is part of a pattern, or consistent with a practice, of noncompliance because AB Credit Union sent the same noncompliant post-sale notice to Wells and the Missouri Subclass.

86.     AB Credit Union's failure to provide notices sufficient under RSMo §§ 400.9-611, 9-614 and 9-616 before commencing its claim for a deficiency judgment violates sections §§ 408.556, 408.557, and 365.145.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

87.     Under § 365.150.2, AB Credit Union's violation of § 365.145 requires it return any time price differential, delinquency or collection charge on the consumer credit contracts that it collected from Wells and the Missouri Subclass.

88.     As a direct and proximate result of AB Credit Union's wrongful acceleration and repossession, and failure to send the requisite notices, Wells and the Missouri Subclass suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

a.  loss of use of tangible property and cost of alternative transportation;

b.  loss resulting from the inability to obtain, or increased costs of, alternative financing;

c.  the surplus after disposition of the collateral that would be equal to the proceeds of disposition less the unaccelerated balance due on the consumer loan contracts and less any wrongfully charged interest;

d.  all monies paid to AB Credit Union by Wells and the Missouri Subclass for the time price differential and delinquency and collection charges on the consumer credit contracts;

e.  harm to credit worthiness, credit standing, credit capacity, character, and general reputation;

f.  harm caused by defamation, slander and libel;

g.  harm caused by invasion of privacy; and

h.  other uncertain and hard-to-quantify actual damages.

89.     AB Credit Union did not intend to violate RSMo §§ 408.554 and 408.555 or any of the statutes under the UCC.

18

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

90.     Wells and the Missouri Subclass are entitled to attorney's fees under RSMo § 408.562.

91.     Wells and the Missouri Subclass are entitled to punitive damages under RSMo § 408.562.

92.     AB Credit Union's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of the consumer rights of Wells and the Missouri Subclass.

WHEREFORE, Wells prays this Court certify the Missouri Subclass and enter a judgment for Wells and the Missouri Subclass against AB Credit Union:

a.  awarding actual damages not less than the minimum damages provided by RSMo § 400.9-625(c)(2);

b.  statutory damages of $500 for each defective post-sale notice sent;

c.  prejudgment and post-judgment interest;

d.  attorney's fees;

e.  punitive damages;

f.  a preliminary and permanent injunction enjoining AB Credit Union from engaging in the practices alleged, including without limitation, enjoining AB Credit Union from collecting deficiency judgments, time price differential, delinquency and collection charges from Wells and the Missouri Subclass;

g.  a mandatory injunction compelling AB Credit Union to return any money collected for deficiency judgments, time price differential, delinquency and collection charges from Wells and the Missouri Subclass;

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

h.  a mandatory injunction compelling AB Credit Union to remove any adverse credit information wrongfully reported on Wells' and the Missouri Subclass's consumer credit reports;

i.  a declaration that the right to cure, presale, and post-sale notices sent by AB Credit Union to Wells and the Missouri Subclass fail to comport with the statutory requirements; and

j.  for such other and further relief as this Court deems just and proper.

By:   */s/ Jesse B. Rochman*
　　　Martin L. Daesch, #40494
　　　Jesse B. Rochman, #60712
　　　110 E. Lockwood Ave.
　　　St. Louis, MO  63119
　　　(314) 963-9000 (telephone)
　　　(314) 963-1700 (facsimile)
　　　daesch@onderlaw.com
　　　rochman@onderlaw.com

　　　*Attorneys for Defendant/Counterclaimant*

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

## Certificate of Service

I certify on May 5, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

_/s/ Jesse B. Rochman_

**1822-CC10769**

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM



**Mark A. Sadler**
Claim Professional | Business Torts
Travelers
385 Washington St. | MC 9275-SB03T
St. Paul, MN 55102

(651) 310-7456
(866) 608-9633 (fax)

November 10, 2017

U.S. Mail and Email (delarson@martinpringle.com)

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
One Main Plaza, 4435 Main Street, Suite 920
Kansas City, MO 64111

| Re: | Insured: | Anheuser-Busch Employees Credit Union |
|-----|----------|----------------------------------------|
| | Claim Nos.: | FAV5286 |
| | Claimant: | Daniel P. Wells |
| | Insurer: | Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America ("Travelers") |
| | Policy No: | H-630-3E389749-COF-16;   HASM-CUP-3E389749-TIL-16; H-630-3E389749-COF-15; HASM-CUP-3E38974-TIL-15;  H-630-3E389749-COF-14;  HASM-CUP-3E389749-TIL-14 |

Dear Mr. Larson:

We are writing to you as coverage counsel for Anheuser-Busch Employees Credit Union in the above referenced matter. The purpose of this letter is to provide you with our coverage evaluation for the claims made by Daniel P. Wells against Anheuser-Busch Employees Credit Union as outlined in his class action counterclaim to a lawsuit brought by Anheuser-Busch Employees Credit Union, and currently pending in the Circuit Court of St. Louis City, Missouri.

**EXHIBIT 2**

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 2

Anheuser-Busch Employees Credit Union has requested coverage for this claim under Policy Nos. H-630-3E389749-COF-16; HASM-CUP-3E389749-TIL-16; H-630-3E389749-COF-15; HASM-CUP-3E38974-TIL-15; H-630-3E389749-COF-14; HASM-CUP-3E389749-TIL-14 issued to Anheuser-Busch Employees Credit Union by Charter Oak Fire Insurance Company and Travelers Property Casualty Company of America (*hereinafter* "Travelers"). We wish to advise you that based on the information we have regarding this claim, as well as the applicable policy language, Travelers agrees to participate in the defense of Anheuser-Busch Employees Credit Union in the above referenced matter. Please note that this agreement is subject to a ***full reservation of rights***, including the right to seek a judicial determination of the coverage issues in this matter, as discussed below.

For your convenience and reference, we have set forth below a more detailed discussion of the reasons for our coverage determination.

## SUMMARY OF THE CLAIM

In the following paragraphs, I will provide a summary of this matter based upon the information and documents provided to date. We realize that Anheuser-Busch Employees Credit Union may dispute the various allegations made by Mr. Wells in this matter. By referring to those allegations in this letter, Travelers does not mean to imply that any of them are true; however, we must necessarily refer to these allegations in determining any obligation Travelers may have to Anheuser-Busch Employees Credit Union under the Travelers policies.

### The Lawsuit

This matter arises from the repossession of an automobile from borrower Daniel P. Wells. Mr. Wells purchased his 2010 Toyota Corolla in January of 2011. By March of 2012, he had fallen behind in his payments. In April of 2012 the vehicle was repossessed and subsequently sold. Anheuser-Busch Employees Credit Union then took steps to recover a deficiency balance and filed a petition in the Circuit Court of St Louis City (Associate Division) to collect this balance as well as sums owed on a credit card. Anheuser-Busch Employees Credit Union secured a default judgment in August of 2015. The default judgment was set aside in March of 2016 and an answer and counterclaim was subsequently filed. In May of 2016, Mr. Wells filed an amended answer and counterclaim asserting class action claim against Anheuser-Busch Employees Credit Union.

### The Amended Answer and Counterclaim

In his first amended counterclaim, Plaintiff states this lawsuit is a consumer class action against Anheuser-Busch Employees' Credit Union ("AB Credit Union"), and its predecessors or successors, seeking relief to redress an unlawful and deceptive pattern of wrongdoing followed by AB Credit Union regarding collection (including collection of alleged deficiencies), enforcement, repossession and disposition of collateral. Plaintiff

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 3

alleges that AB Credit Union wrongfully accelerated consumer credit contracts on loans made to Wells and many other Missouri consumers and wrongfully repossessed their collateral because AB Credit Union either failed to send the right to cure notice required by RSMo § 408.554 ("Right to Cure Notices") or sent defective Right to Cure Notices before repossession. It is further alleged that AB Credit Union sent Wells and many other consumers a presale notice, which did not comply with the Uniform Commercial Code ("UCC") adopted by each state. It is further alleged that AB Credit Union sent Wells and numerous other consumers a post-sale notice, which did not comply with the UCC.

Plaintiff complains that AB Credit Union's failure to provide a statutorily compliant pre and post-sale notices is part of a pattern, or consistent with a practice, of noncompliance. It is further alleged that AB Credit Union sued Wells and the Missouri Subclass without giving the notice required by RSMo § 408.557, and sought interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.  AB Credit Union's deficiency judgments against Wells and the Class included interest, charges, and expenses that affected their deficiency balances, including interest, attorney's fees and other costs of collection.

Plaintiff further complains that AB Credit Union has maintained a practice and policy of reporting derogatory information regarding the class members to local consumer reporting agencies and the three national consumer credit reporting agencies: Equifax Credit Information Services, Inc., Experian, Inc., and TransUnion, LLC (collectively, "CRAs"), despite its failure to comply with the right to cure, presale and post-sale notice requirements. It is also alleged that the defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports harmed the class members' credit worthiness, credit standing, credit capacity, character, and general reputation. Further, Plaintiff alleges that the defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that defames, slanders or libels the class members. Also, it is alleged that the defective right to cure, presale and post-sale notices, and the reporting of false or inaccurate derogatory information on the class members' credit reports were oral or written publication of material that invaded the class members' privacy rights.

Plaintiff attempts to certify a class, including all persons: (a) who are named as borrowers or buyers on a loan or financing agreement with AB Credit Union, assigned to AB Credit Union or owned by AB Credit Union; (b) whose loan or financing agreement was secured by collateral; (c) whose collateral was repossessed; and (d) whose collateral was disposed.

Plaintiff also seeks to certify a Missouri Subclass comprises all persons within the Class: (a) who obtained a Missouri Certificate of Title for a motor vehicle identifying AB Credit Union as the lienholder, or who are named as borrowers or buyers with a Missouri address on a loan or financing agreement with AB Credit Union, assigned to AB Credit Union or owned by AB Credit Union; (b) whose loan or financing agreement was secured by a motor

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 4

vehicle or other collateral; (c) whose motor vehicle or other collateral was repossessed; and (d) whose motor vehicle or other collateral was disposed.

Plaintiff asserts two causes of action, including:

(I) A **Nationwide class claim** alleging that AB Credit Union violated the UCC by failing to provide the presale notice in the form and manner required under the UCC before disposing of collateral secured by loans entered by, assigned to, or owned by AB Credit Union. Mr. Wells and the Class claim to have suffered actual damages not less than the minimum damages provided by § 9-625(c)(2), including: (a) loss of use of tangible property and cost of alternative transportation; (b) loss resulting from the inability to obtain, or increased costs of, alternative financing; (c) harm to credit worthiness, credit standing, credit capacity, character, and general reputation; (d) harm caused by defamation, slander and libel; (e) harm caused by invasion of privacy; and (f) other uncertain and hard-to-quantify actual damages. Plaintiff specifically seeks relief, including certification of a Class; an award of actual damages not less than the minimum damages provided by § 9-625(c)(2); an award of statutory damages of $500 for each defective post-sale notice sent or that AB Credit Union failed to send; prejudgment and post-judgment interest; Injunctive relief, and, declaratory relief.

(II) A **Missouri Subclass' claim** alleging that AB Credit Union violated, RSMo § 408.555 by wrongfully accelerating the maturity of the unpaid balance, taking possession of the collateral or otherwise enforcing its security interest without given the proper notice required by RSMo § 408.554. Further, it is alleged that AB Credit Union wrongfully repossessed the collateral secured by the consumer credit contracts and caused Wells and the Missouri Subclass the loss of use of tangible property.

Plaintiff complains that AB Credit Union's wrongful acceleration of the maturity of the unpaid balances under the consumer credit contracts and wrongful repossession of the collateral secured by the consumer credit contracts renders the presale notices unreasonable and misleading in violation of RSMo §§ 400.9-611 and 9-614(5), (6) because, among other reasons, it misstates the payoff balance and the consumer's redemption rights. It is alleged that AB Credit Union did not send proper post-sale notices, or provide any other explanation or writing, sufficient to provide notice under RSMo §§ 400.9-611, 9-614 and 9-616 prior to commencing its claim for a deficiency judgment. As a result, it is alleged that it has violated sections §§ 408.556, 408.557, and 365.145. It is also alleged that under § 365.150.2, AB Credit Union's violation of § 365.145 requires it return any time price differential, delinquency or collection charge on the consumer credit contracts that it collected from Wells and the Missouri Subclass.  Mr. Wells and the Missouri Subclass claim t have suffered actual damages not less than the minimum damages provided by § 400.9-625(c)(2), including:

(a) loss of use of tangible property and cost of alternative transportation; (b) loss resulting from the inability to obtain, or increased costs of, alternative financing; (c) the surplus after disposition of the collateral that would be equal to the proceeds of disposition less the

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 5

uncelebrated balance due on the consumer loan contracts and less any wrongfully charged interest; (d) all monies paid to AB Credit Union by Wells and the Missouri Subclass for the time price differential and delinquency and collection charges on the consumer credit contracts; (e) harm to credit worthiness, credit standing, credit capacity, character, and general reputation; (f) harm caused by defamation, slander and libel; (g) harm caused by invasion of privacy; and (h) other uncertain and hard-to-quantify actual damages. Plaintiff states that AB Credit Union did not intend to violate RSMo §§ 408.554 and 408.555 or any of the statutes under the UCC.

In addition, Plaintiff seeks relief, including an award of actual damages, statutory damages of $500 for each defective post-sale notice sent, prejudgment and post-judgment interest, attorney's fees, punitive damages, injunctive relief, and declaratory relief. Plaintiff also states that Wells and the Missouri Subclass are entitled to attorney's fees under RSMo § 408.562 and are entitled to punitive damages under RSMo § 408.562. AB Credit Union's actions were wanton, outrageous, and/or malicious because of its reckless indifference to or conscious disregard of the consumer rights of Wells and the Missouri Subclass.

### *Anheuser-Busch Employees Credit Union*

An answer was never filed to the Amended Answer and Counterclaim. In June of 2017, Anheuser-Busch Employees Credit Union's current counsel, Tom Martin of Lewis Rice, LLC, filed a motion for leave to file an answer to the first amended complaint, out of time. The motion was denied. In a letter to September 8, 2017, counsel for Mr. Wells asserts that "[a]lthough class definitions have temporal limitations due to statute of limitations defenses, AB has no statute of limitations defense because it hasn't and cannot plead one***" Specifically, it appears that due to the failure to answer this matter, Anheuser-Busch Employees Credit Union has lost its ability to assert multiple affirmative defenses, including the statute of limitations and offset.

### TRAVELERS POLICY PROVISIONS

Charter Oak Fire Insurance Company provides coverage for Anheuser Busch Employee Credit Union under its policy No. H-630-3E389749-COF-14 for the dates April 1, 2014 – 2015. The coverage includes Commercial General Liability coverage under form CG0001 (Ed. 10-01). The policy also includes forms CGD471 (Ed. 02-09), Amendment of Coverage B – Personal and Advertising Injury Liability, form CGD409 (Ed. 04-08), Amendment of Bodily Injury Definition, form CGD419 (Ed. 07-08), Amendment of Property Damage Definition, and form CGD564 (Ed. 05-12), Exclusion – Professional Credit Union Financial Services. The limits of coverage are $1 million per occurrence, $1 million personal and advertising injury liability and a $2 million general aggregate limit.[1]

---

[1] Please note that Travelers also provided several policies containing commercial general liability coverage and umbrella excess coverage's during the putative class period:

*2016-2017*

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 6

---

*Primary Coverage*

Travelers policy No. H-630-3E389749-COF-16 for the dates April 1, 2016 – 2017. The coverage includes Commercial General Liability coverage under form CG0001 (Ed. 10-01). The policy also includes forms CGD471 (Ed. 01-15), Amendment of Coverage B – Personal and Advertising Injury Liability, form CGD409 (Ed. 04-08), Amendment of Bodily Injury Definition, form CGD419 (Ed. 07-08), Amendment of Property Damage Definition, form CGD746 (Ed. 01-15), Exclusion – Access of Disclosure of Personal of Confidential Information, and form CGD564 (Ed. 05-12), Exclusion – Professional Credit Union Financial Services. The limits of coverage are $1 million per occurrence, $1 million personal and advertising injury liability and a $2 million general aggregate limit.

*Umbrella Excess Coverage*

Travelers policy No. HSM-CUP-3E389749-TIL-16 for the dates April 1, 2016 – 2017. The coverage includes Commercial Excess Liability (Umbrella) coverage under form UM0001 (Ed. 07-08). The policy also includes form UM0511 (Ed. 02-09), Amendment of Coverage – Advertising injury and Property Damage, form UM466 (Ed. 04-08), Amendment of Bodily Injury Definition, form UM478 (Ed. 07-08), Amendment of Property Damage Definition, form CGD650 (Ed. 01-15), Exclusion – Confidential or personal Information, and form UM0578 (Ed. 05-12), Professional Credit Union Financial Services Exclusion. The limits of coverage are $5 million per occurrence, $5 million personal and advertising injury liability and a $5 million general aggregate limit.  There is a $10,000 retained limit.

*2015-2016*

*Primary Coverage*

Travelers policy No. H-630-3E389749-COF-15 for the dates April 1, 2015 – 2016. The coverage includes Commercial General Liability coverage under form CG0001 (Ed. 10-01). The policy also includes forms CGD471 (Ed. 01-15), Amendment of Coverage B – Personal and Advertising Injury Liability, form CGD409 (Ed. 04-08), Amendment of Bodily Injury Definition, form CGD419 (Ed. 07-08), Amendment of Property Damage Definition, form CGD746 (Ed. 01-15), Exclusion – Access of Disclosure of Personal of Confidential Information, and form CGD564 (Ed. 05-12), Exclusion – Professional Credit Union Financial Services. The limits of coverage are $1 million per occurrence, $1 million personal and advertising injury liability and a $2 million general aggregate limit.

*Umbrella Excess Coverage*

Travelers policy No. HSM-CUP-3E389749-TIL-15 for the dates April 1, 2015 – 2016. The coverage includes Commercial Excess Liability (Umbrella) coverage under form UM0001 (Ed. 07-08). The policy also includes form UM0511 (Ed. 02-09), Amendment of Coverage – Advertising injury and Property Damage, form UM466 (Ed. 04-08), Amendment of Bodily Injury Definition, form UM478 (Ed. 07-08), Amendment of Property Damage Definition, form CGD650 (Ed. 01-15), Exclusion – Confidential or personal Information, and form UM0578 (Ed. 05-12), Professional Credit Union Financial Services Exclusion. The limits of coverage are $5 million per occurrence, $5 million personal and advertising injury liability and a $5 million general aggregate limit.  There is a $10,000 retained limit.

*2014-2015*

*Umbrella Excess Coverage*

Travelers policy No. HSM-CUP-3E389749-TIL-15 for the dates April 1, 2015 – 2016. The coverage includes Commercial Excess Liability (Umbrella) coverage under form UM0001 (Ed. 07-08). The policy also includes form UM0511 (Ed. 02-09), Amendment of Coverage – Advertising injury and Property Damage, form

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 7


The CGL coverage form contains the following insuring agreement relating to Bodily Injury and Property Damage Liability Coverage (Coverage A), which reads in relevant part as follows (CG0001 (Ed. 10-01)):

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      Insuring Agreement

     a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * *

     b.      This insurance applies to "bodily injury" and "property damage" only if:

          (1)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
          (2)      The "bodily injury" or "property damage" occurs during the policy period;

Please note that certain terms are contained within quotes, which signifies that the term is defined in the policy.  We refer you to the following terms and phrases which are defined in the policy as follows:

**SECTION V – DEFINITIONS**

* * *

**"Bodily injury"**[5] means:

---

UM466 (Ed. 04-08), Amendment of Bodily Injury Definition, form UM478 (Ed. 07-08), Amendment of Property Damage Definition, and form UM0578 (Ed. 05-12), Professional Credit Union Financial Services Exclusion. The limits of coverage are $5 million per occurrence, $5 million personal and advertising injury liability and a $5 million general aggregate limit.  There is a $10,000 retained limit.

As the terms of the above referenced polices are similar to those discussed above, we will not include a separate analysis under the coverage during these policy terms. However, where there are pertinent differences, we will note the same in a footnote.

[5] The definition of "Bodily Injury" is as defined in form CGD409 (Ed. 07-08), Amendment of Bodily Injury Definition.

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 8

**a.**  Physical harm, including sickness or disease, sustained by a person; or

**b.**  Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

\* \* \*

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**"Property damage"**[6] means:

**a.**  Physical damage to tangible property of others, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical damage that caused it; or

**b.**  Loss of use of tangible property of others that is not physically damaged. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

\* \* \*

In addition, Coverage "A" of the policy contains the following exclusions that maybe applicable to this matter:

**2.  Exclusions**

This insurance does not apply to:

**Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\* \* \*

The policy also contains form CGD471 (Ed. 02-09), Amendment of Coverage B – Personal and Adverting Injury Liability which contains the following provisions relating to Personal Injury and Advertising Injury Liability coverage:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1.  Insuring Agreement.

---

[6] The definition of "Property Damage" is as defined in form CGD419 (Ed. 07-08), Amendment of Property Damage Definition.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 9

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" and "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury and advertising injury" to which this insurance does not apply. * * *

    b.  This insurance applies to "personal injury and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

The policy includes the following pertinent definitions:

"Advertising injury":[2]

---

[2] Please note that the January-2015 version of form CGD436 is included on the 2015-2016 and 2016-2017 policy terms contains the following, more limited, definition of "Advertising Injury,:

**"Advertising injury"**:

    **a.**  Means injury, other than "personal injury", caused by one or more of the following offenses:

        **(1)**  Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

        **(2)**  Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

            **(a)**  Appropriates a person's name, voice, photograph or likeness; or

            **(b)**  Unreasonably places a person in a false light; or

        **(3)**  Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

    **b.**  Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

In addition, the  January-2015 version of form CGD437 is included on the 2015-2016 policy and contains the following, more limited, definition of "Advertising Injury:"

"Advertising injury":

    **a.**  Means injury caused by the infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

    **b.**  Includes "bodily injury" caused by the offense described in Paragraph **a.** above.

* * *

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 10

    **a.**  Means injury, other than "personal injury", caused by one or more of the following offenses:

        **(1)**  Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

        **(2)**  Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

            **(a)**  Appropriates a person's name, voice, photograph or likeness;

            **(b)**  Unreasonably places a person in a false light; or

            **(c)**  Discloses information about a person's private life; or

        **(3)**  Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

    **b.**  Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

\* \* \*

"Personal injury":[3]

---

[3] Please note that the January-2015 version of form CGD436 included on the 2015-2016 and 2016-2017 policy terms contains the following, more limited, definition of "Personal Injury,:

**"Personal injury"**:

    **a.**  Means injury, other than "advertising injury", caused by one or more of the following offenses:

        **(1)**  False arrest, detention or imprisonment;

        **(2)**  Malicious prosecution;

        **(3)**  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

        **(4)**  Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

        **(5)**  Oral or written publication, including publication by electronic means, of material that:

            **(a)**  Appropriates a person's name, voice, photograph or likeness; or

            **(b)**  Unreasonably places a person in a false light.

    **b.**  Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 11

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

**(5)** Oral or written publication, including publication by electronic means, of material that:

**(a)** Appropriates a person's name, voice, photograph or likeness;

**(b)** Unreasonably places a person in a false light; or

**(c)** Discloses information about a person's private life.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above

\* \* \*

The policy also includes the following exclusion that is applicable to Coverage B;

## 2.  Exclusions

---

In addition, the  January-2015 version of form CGD437 is included on the 2015-2016 policy and contains the following, more limited, definition of "Personal Injury:"

Personal injury":

**a.** Means injury caused by one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution; or

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 12

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

\* \* \*

**c. Material Published Or Used Prior To Policy Period**

**(1)** "Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period;\*\*\*

In addition, the policy contains from CGD564 (Ed. 05-12), Professional Credit Union Financial Services Exclusion, which excludes coverage as follows:

**1.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Professional Credit Union Financial Services**

"Bodily injury" or "property damage" arising out of providing or failing to provide professional "credit union financial services" by any insured to others.

This exclusion does not apply to:

**(1)** "Bodily injury" or "property damage" arising out of any typographical error;

**(2)** "Bodily injury" or "property damage" arising out of any clerical error in any deposit into or withdrawal from any customer's account;

**(3)** "Bodily injury" to your customer, or "property damage" to property owned or used by your customer, that occurs while such customer is on your premises for the purpose of receiving professional "credit union financial services"; or

**(4)** "Bodily injury" or "property damage" ***arising out of the act of taking possession*** of real or personal property in connection with any of the following operations or activities: [Emphasis Added]

**(a)** Lending;

**(b)** Leasing; or

**(c)** Extension of credit.

**2.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Professional Credit Union Financial Services**

"Personal injury" or "advertising injury" arising out of providing or failing to provide professional "credit union financial services" by any insured to others.

This exclusion does not apply to "personal injury" or "advertising injury" arising out of any:

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 13

    **(1)** Typographical error; or

    **(2)** Clerical error in any deposit into or withdrawal from any customer's account.

**3.** The following is added to the **DEFINITIONS** Section:

"Credit union financial services" includes:

    **a.** Any of the services that any insured provides or is required to provide for any insured's customer, including insurance services, investment services, real estate services, tax services, trust services and other similar services, under:

        **(1)** An agreement between any insured and the customer; or

        **(2)** A written contract or agreement between the insured and a third party in which any insured agrees to provide such services for the customer on behalf of the third party;

    **b.** Planning, managing, administering, advising on or acting in a fiduciary capacity for any deposit account;

    **c.** Evaluating, analyzing, administering, managing, advising on or servicing, or providing opinions or instructions in connection with, any of the following operations or activities:

        **(1)** Lending, leasing or extension of credit; or

        **(2)** Credit card or debit card;

    **d.** Checking or reporting of credit;

    **e.** Maintaining or providing information concerning any financial account, record or balance;

    **f.** Selling or issuing any travelers check, certified check, bank check, money order, other similar monetary instrument or money transfer; or

    **g.** Administering or leasing any safe deposit or lock box.

* * *

In addition, policy form CG0001 (Ed. 10-01) includes the following condition that is pertinent to this matter:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 14

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

The policy also includes an Amendment – Non Cumulation of Each Occurrence Limits of Liability and Non Cumulation of Personal and Advertising Injury Limit endorsement under form CGD203 (Ed. 12-97) that limit coverage as follows:

**1.** Paragraph 5 of SECTION III - LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Each Occurrence Limit - If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

**2.** Paragraph 4 of SECTION III - LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Personal and Advertising Limit - If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

\* \* \*

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 15


## COVERAGE ANALYSIS

Travelers' position, as discussed below, is that there are no allegations in the Complaint that present any potential for coverage. Travelers' agreement to defend Anheuser-Busch Employees Credit Union does not mean that Travelers has or will have a duty to indemnify Anheuser-Busch Employees Credit Union for any damages for which it may be liable. Travelers' decision to provide a defense to Anheuser-Busch Employees Credit Union is subject to a *full reservation of rights*.  Travelers' coverage determination is based on the information made available to date, and Travelers reserves its right to modify or supplement its coverage position based on additional information that it may obtain in the future.  If you have any additional information that you believe could affect Travelers' coverage analysis, please provide it to me immediately. Travelers reserves its rights on the following issues:

- Travelers has been substantially prejudiced by the non-compliance with your notice and reporting obligations under the Policy.  Those duties are set forth in full, above (see paragraph 2 of SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS).  Travelers is still attempting to assess the full scope of the problems caused by that breach.  At this time, as you are aware, the initial Answer and Counterclaim in this matter was filed on April of 2016.  However, Travelers only received notice of this claim in late September 2017.  By that time Anheuser-Busch Employees Credit Union and it counsel already had neglected to file an answer to Plaintiffs Amended Counterclaim resulting in the loss of several significant affirmative defenses.  It also appears that the Anheuser-Busch Employees Credit Union engaged in some level of settlement discussions with the Plaintiff without notice to, much less participation of, Travelers prior to the tender to Travelers.  As you can see from paragraph 2 in the Conditions section of the policy, Anheuser-Busch Employees Credit Union was required, among other things, to see to it that we received written notice of the claim or "suit" as soon as practicable, immediately send us copies of any demands, notices, summonses or legal papers served in connection with any "suit," cooperate with us in our investigation, and refrain from voluntarily making any payment, assume any obligation or incur any expense, without Travelers' consent.  Those conditions have been violated and Travelers has been notified only after your counsel failed to timely respond to pleadings resulting in loss of important defenses which would have had a significant impact on both liability and damages.  Travelers has been prejudiced substantially by the breaches of those conditions by Anheuser-Busch Employees Credit Union.  Though Travelers has agreed to provide a defense, now that Travelers has notice of the suit, Travelers reserves its right to decline coverage based on the extensive breaches by Anheuser-Busch Employees Credit Union of the Policy's notice and reporting conditions as well as possibly the conditions regarding voluntary payments and assumption of obligations.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 16

- In order for coverage to apply under Coverage A of the policy, the claim must seek damages because of "Bodily Injury" or "Property Damage" caused by an "Occurrence." The claim for wrongful repossession of collateral does not present a claim for "property damage" within the meaning of the policy nor does the putative class seek damages because of "property damage."  Moreover to the extent there was any "property damage" that may have been sustained, such damage was not the result of an "Occurrence," and in any event is excluded under the Expected or Intended Injury exclusion as AB Credit Union is alleged to have intended both the act that caused the harm alleged (the repossession of collateral) and the harm itself.

- There does not appear to be a claim under the policy's "Advertising Injury" coverage grant as there is specifically no claim alleging advertising activity conducted by Anheuser-Busch Employees Credit Union and involving an enumerated "Advertising Injury Offense."

- Plaintiff's allegation that Anheuser-Busch Employees Credit Union has committed defamation, libel, slander and invasion of privacy may constitute "Personal Injury," under the pre-2015 definition of "Personal Injury."  However, under the definition of the post 2015 definition, the allegation of invasion of privacy does not appear to fall within the definition of "Personal Injury." In addition, the policy excludes "Personal Injury" and "Advertising Injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "Personal Injury" and "Advertising Injury" that may apply.

- In order for coverage to apply under either coverage "A" or coverage "B" of the Travelers policy, the damage or offense that takes place must occur or be committed during the policy period of a Travelers policy. As noted above, the Travelers policies were in effect from April 1, 2014 to April 1, 2017. Plaintiffs' counsel has taken the position that "[a]lthough class definitions have temporal limitations due to statute of limitations defenses, [Anheuser-Busch Employees Credit Union] has no statute of limitations defense because it hasn't and cannot plead one***" In addition, Plaintiff states that the claims are based upon Anheuser-Busch Employees Credit Union's presale notice to class members from July 1, 2001. Therefore, the class period includes dates pre-dating the inception date of the first Travelers policy. In the event there were a claim seeking "Bodily Injury," "Property Damage," "Personal Injury," or "Advertising Injury", caused by an "occurrence" or offense that takes place or is committed prior to the inception of the Travelers policy the Travelers coverage would be inapplicable.

- In addition, as noted above, the putative class period extends prior to the inception of the first Travelers policy. The policy excludes "Personal Injury" or "Advertising Injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period. It appears to be alleged that the notices in question were first sent

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 17

prior to the inception of the first Travelers policy period, therefore, in the event there is "Personal Injury" or "Advertising Injury," coverage may be precluded under the Material Published or Used Prior to Policy Period exclusion.

- The policy includes a Professional Credit Union Financial Services Exclusion which excludes coverage for "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of providing or failing to provide professional "credit union financial services" by any insured to others. The definition of "credit union financial services" includes among other things "(c) evaluating, analyzing, administering, managing, advising on or servicing, or providing opinions or instructions in connection with, lending, leasing or extension of credit; (d) [c]hecking or reporting of credit; or (e) [m]aintaining or providing information concerning any financial account, record or balance." Here all of injuries claimed arose from AB Credit Union's conduct in providing or failing to provide such "credit union financial services." Therefore, any "Property Damage" or "Personal Injury" in this matter is excluded under the Professional Credit Union Financial Services Exclusion

- The Answer and Counterclaim seeks punitive damages as well as injunctive and other declaratory relief. The policy does not cover punitive damages as such damages are not compensatory and therefore not damages because of "bodily injury, "property damage," "advertising injury" or "personal injury." In addition, punitive damages are not insurable as a matter of state law as against public policy. Similarly, the policy provides no coverage for injunctive and declaratory relief because none of those are damages under the policy.

- The putative class period potentially extends across multiple policy periods. Therefore coverage for "Bodily Injury," "Property Damage," "Personal Injury," of "Advertising Injury," if applicable may be reduced or limited through operation of the above cited Non Cumulation of Each Occurrence Limits of Liability and Non Cumulation of Personal and Advertising Injury Limit endorsement.

- Travelers reserves its right to the extent permitted by Missouri law to deny coverage and withdraw from the defense of this matter after providing proper notice.

- Travelers expressly reserves all of its rights, contractual, quasi-contractual and/or otherwise, to seek an allocation of defense fees and costs between covered and non-covered claims and to seek reimbursement of all defense fees and costs paid on Anheuser-Busch Employees Credit Union's behalf, to the extent permitted by Missouri law, in connection with the defense of any and all non-covered claims.

- Travelers also expressly reserves all of its rights, contractual, quasi-contractual and/or otherwise, to seek reimbursement from Anheuser-Busch Employees Credit

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 18

> Union, to the extent permitted by Missouri law, for any amount paid by Travelers, by way of settlement or judgment, for any and all non-covered claims.

- Travelers reserves the right to seek a judicial determination in this matter.

## DEFENSE COVERAGE

As discussed above, Travelers has agreed to participate in the defense of Anheuser-Busch Employees Credit Union. Its obligations are limited to the reasonable and necessary defense fees and costs incurred in connection with the defense of Anheuser-Busch Employees Credit Union in connection with this matter. It is our understanding that Anheuser-Busch Employees Credit Union has retained attorney Tom Martin of the *Lewis and Rice* law firm to defend its interests in this matter.

Travelers will pay only post-tender defense costs.  It appears that this claim was tendered to Travelers on or about **September 28, 2017**.  Please note that Defense costs include only fees incurred for the defense of Anheuser-Busch Employees Credit Union in connection with the claim brought by Mr. Wells and the putative class and do not include fees related to coverage matters or other corporate matters. Disbursements are paid at the actual out-of-pocket cost, with no law firm surcharge. Additional information regarding disbursements is contained in the Travelers billing Requirements, a copy of which accompanies this letter. These Guidelines explain how Travelers evaluates the reasonableness of legal fees and disbursements billed by defense counsel.

## CONCLUSION

This coverage determination is based on information that has been made available to date. Travelers reserves its right to modify or supplement this coverage communication based on additional information obtained or received.  If you have any other information that you believe may affect our coverage determination, please feel forward such information to me immediately.

Please note that nothing contained in this letter shall be construed as a waiver of the terms or conditions of the Travelers policies. Travelers specifically reserves the right to rely on any policy term, condition, provision or exclusion or any other ground that may be subsequently found to limit or preclude coverage. Please note that other policy terms, conditions, limitations, and/or exclusions may apply to this claim, even if not specifically addressed in this letter.

Based upon the information we have been provided to date Anheuser-Busch Employees Credit Union likely faces a substantial uncovered claim. It is our recommendation that Anheuser-Busch Employees Credit Union be certain that it has put all potential insurance carriers on notice.

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

Mr. David E. Larson, Esq.
Martin Pringle Attorneys at Law
11/10/2017
Page 19


If you have any questions, please feel free to contact me at (651) 310-7456 direct-dial /
(866) 608-9633 fax. We will look forward to working with you on the defense of this
matter.

Sincerely,

CHARTER OAK FIRE INSURANCE COMPANY
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA


By  *Mark A. Sadler*
Mark A. Sadler
Claim Professional | Business Torts
Travelers
385 Washington St. | MC SB03T
St. Paul, MN 55102
W: (651) 310-7456 F: 866-608-9633
msadler@travelers.com

Electronically Filed - City of St. Louis - July 16, 2018 - 01:06 PM

**1822-CC10769**

Case Number (For Court Use Only) _____

## CONFIDENTIAL CASE FILING INFORMATION SHEET – NON-DOMESTIC RELATIONS

**INSTRUCTIONS:**
- ✓ Complete this form for all parties known at the time of filing. Provide the most appropriate Case Type and Party Type codes and descriptions. (Found on the Case Types List and Party Types List at www.courts.mo.gov on the Court Forms/Filing Information page.)
- ✓ If additional space is needed, complete additional Confidential Case Filing Information Sheets.

**NOTE:** The **full** Social Security Number (SSN) is **required** pursuant to Missouri Supreme Court Operating Rule 4.07 if the party is a person and is reasonably available. This is a confidential document. This information is needed to open a case in the court's case management system. While cases deemed public under Missouri statutes can be accessed through Case.net, the day and month of birth, SSN, and confidential addresses are NOT provided to the public through Case.net.

Filing Date: 7/16/2018      County/City of St. Louis: City of St. Louis

Style of Case: Anheuser Busch Employee Credit Union v. Travelers Property Casualty Company of America, et al.
(i.e. In the Estate of; In the Matter of; Petitioner v. Respondent.)

Case Type Code: CA      Case Type Description: Breach of Contract

---

Party Type Code: PLT      Party Type Description: Plaintiff

Name (if a person): (Last) _____ (First) _____ (Middle) _____

Organization (if non-person): Anheuser Busch Employee Credit Union

Address: 1001 Lynch Street

City: St. Louis    State: MO    Zip: 63118    Contact Telephone Number: _____

DOB/DOD: _____ Gender: ☐ Male ☐ Female   SSN: _____

Attorney Name (if represented by counsel): David E. Larson    Bar ID: 27146   Party Type Code: PLT

---

Party Type Code: DFT      Party Type Description: Defendant

Name (if a person): (Last) _____ (First) _____ (Middle) _____

Organization (if non-person): Travelers Property Casualty Company of America

Address: 221 Bolivar Street

City: Jefferson City    State: MO    Zip: 65101    Contact Telephone Number: _____

DOB/DOD: _____ Gender: ☐ Male ☐ Female   SSN: _____

Attorney Name (if represented by counsel): _____ Bar ID: _____ Party Type Code: _____

---

Party Type Code: DFT      Party Type Description: Defendant

Name (if a person): (Last) _____ (First) _____ (Middle) _____

Organization (if non-person): The Charter Oak Fire Insurance Company

Address: 221 Bolivar Street

City: Jefferson City    State: MO    Zip: 65101    Contact Telephone Number: _____

DOB/DOD: _____ Gender: ☐ Male ☐ Female   SSN: _____

Attorney Name (if represented by counsel): _____ Bar ID: _____ Party Type Code: _____

---

Submitted by: /s/ David E. Larson      Bar ID (required if attorney): 27146

Address (if not shown above): 4435 Main Street, Suite 920

City: Kansas City    State: MO    Zip: 64111

Phone: 816-753-6006      Email Address: delarson@martinpringle.com

*IMPORTANT: It is the parties' responsibility to keep the court informed of any change of address or employment.*