IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANHEUSER BUSCH EMPLOYEE CREDIT UNION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | No.  4:18-cv-1208-CDP |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and THE CHARTER OAK FIRE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ANSWER, ADDITIONAL AND AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

COME NOW Defendants TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers Property") and THE CHARTER OAK FIRE INSURANCE COMPANY ("Charter Oak") (collectively "Travelers"), by and through counsel, and for their answer to the state-court petition (the "Petition") filed by Plaintiff ANHEUSER BUSCH EMPLOYEE CREDIT UNION (the "AB Credit Union"), which Travelers removed to this Court, state and allege as follows:

### STATEMENT OF CASE

1.      Travelers denies the allegations in paragraph 1 of the Petition.

### ALLEGATIONS COMMON TO ALL CLAIMS

### PARTIES

2.      Travelers is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 2 of the Petition and, therefore, denies the same.

3.      Travelers denies the allegations in paragraph 3 of the Petition to the extent that Travelers does not have any office or agents in St. Louis with respect to this matter.

4.      Travelers denies the allegations in paragraph 4 of the Petition to the extent that Travelers does not have any office or agents in St. Louis with respect to this matter.

## JURISDICTION AND VENUE

5.      Travelers admits the AB Credit Union properly laid state court venue in the Circuit Court of the City of St. Louis.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 5 of the Petition.

6.      Travelers admits it was subject to the personal jurisdiction of the Circuit Court of the City of St. Louis.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 6 of the Petition.

7.      Travelers admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and 1441 because this case involves a controversy between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as measured by the value of the AB Credit Union's right to defense and indemnity and the amount of the settlement that is now at issue.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 7 of the Petition.

## THE AB CREDIT UNION'S INSURANCE POLICY [*SIC*] FROM TRAVELERS

8.      Travelers admits that it issued the following insurance policies to the AB Credit Union:

> Charter Oak Policy No. 630-3E389749-COF-14, policy period April 1, 2014 through April 1, 2015 (hereinafter, the "2014-15 Primary Policy," a copy of which attached hereto and incorporated by reference as Exhibit A);

> Charter Oak Policy No. 630-3E389749-COF-15, policy period April 1, 2015 through April 1, 2016 (hereinafter, the "2015-16 Primary Policy," a copy of which is attached hereto and incorporated by reference as Exhibit B);

Charter Oak Policy No. 630-3E389749-COF-16, policy period April 1, 2016 through April 1, 2017 (hereinafter, the "2016-17 Primary Policy," a copy of which is attached hereto and incorporated by reference as Exhibit C);

The Charter Oak policies are sometimes referred to collectively as the "Primary Policies."

Travelers Property Policy No. HSM-CUP-3E389749-TIL-14, policy period April 1, 2014 through April 1, 2015 (hereinafter, the "2014-15 Umbrella Policy," a copy of which is attached hereto and incorporated by reference as Exhibit D);

Travelers Property Policy No. HSM-CUP-3E389749-TIL-15, policy period April 1, 2015 through April 1, 2016 (hereinafter, the "2015-16 Umbrella Policy," a copy of which is attached hereto and incorporated by reference as Exhibit E); and

Travelers Property Policy No. HSM-CUP-3E389749-TIL-16, policy period April 1, 2016 through April 1, 2017 (hereinafter, the "2016-17 Umbrella Policy," a copy of which is attached hereto and incorporated by reference as Exhibit F).

The Travelers Property policies are sometimes referred to collectively as the "Umbrella Policies."

Travelers expressly denies that the above six policies can be described clearly or accurately in allegations that purport to refer to all six policies as "the policy," as does the Petition beginning with its paragraph 8.  In the interests of expediting this matter Travelers nevertheless has attempted below to respond to the balance of the undifferentiated allegations in the Petition. Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 8 of the Petition.

9.     Travelers admits that each of the Primary Policies have an "Each Occurrence Limit" of $1,000,000 and a "General Aggregate Limit" of $2,000,000 subject to the terms and conditions of the Primary Policies.  Travelers also admits that each of the Umbrella Policies have "Aggregate Limits of Liability" of $5,000,000 subject to the terms and conditions of the

Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 9 of the Petition.

10.     The Primary Policies and the Umbrella Policies speak for themselves.  Travelers denies the allegations of paragraph 10 to the extent that such allegations are inconsistent with the Primary Policies and the Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 10 of the Petition.

11.     The Primary Policies and the Umbrella Policies speak for themselves.  Travelers denies the allegations of paragraph 11 to the extent that such allegations are inconsistent with the Primary Policies and the Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 11 of the Petition.

12.     The Primary Policies and the Umbrella Policies speak for themselves.  Travelers denies the allegations of paragraph 12 to the extent that such allegations are inconsistent with the Primary Policies and the Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 12 of the Petition.

13.     The Primary Policies and the Umbrella Policies speak for themselves.  Travelers denies the allegations of paragraph 13 to the extent that such allegations are inconsistent with the Primary Policies and the Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 13 of the Petition.

14.     The Primary Policies and the Umbrella Policies speak for themselves.  Travelers denies the allegations of paragraph 14 to the extent that such allegations are inconsistent with the Primary Policies and the Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 14 of the Petition.

15.     Travelers denies the allegations in paragraph 15 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Primary Policies, which are the best evidence of their own terms.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 15 of the Petition.

16.     The Primary Policies and the Umbrella Policies speak for themselves.  Travelers denies the allegations of paragraph 16 to the extent that such allegations are inconsistent with the Primary Policies and the Umbrella Policies.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 16 of the Petition.

**FACTS GIVING RISE TO CLASS ACTION CLAIMS AGAINST THE AB CREDIT UNION**

17.     Travelers admits the allegations in paragraph 17 of the Petition.

18.     Travelers admits the allegations in paragraph 18 of the Petition.

19.     Travelers admits the allegations in paragraph 19 of the Petition.

20.     Travelers admits that Daniel P. Wells ("Wells") filed an answer and counterclaim on March 14, 2016, which Wells thereafter amended on May 5, 2016.  Travelers further admits that a true and accurate copy of the First Amended Answer and Counterclaim (the "Amended Counterclaim") in case no. 1522-AC09263-01 (the "Underlying Suit"), is attached as Exhibit 1 to the AB Credit Union's Petition.  Travelers denies the allegations in paragraph 20 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim, which is the best evidence of its contents.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 20 of the Petition.

21.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 21 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except

as expressly admitted herein, Travelers denies the remaining allegations in paragraph 21 of the Petition.

22.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 22 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 22 of the Petition.

23.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 23 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 23 of the Petition.

24.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 24 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 24 of the Petition.

25.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 25 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 25 of the Petition.

26.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 26 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 26 of the Petition.

27.     Travelers denies the allegations in paragraph 27 of the Petition.

28.     The Amended Counterclaim speaks for itself and is the best evidence of its contents.  Travelers denies the allegations in paragraph 28 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Amended Counterclaim.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 28 of the Petition.

29.     Travelers denies the allegations in paragraph 29 of the Petition.

30.     Travelers denies the allegations in paragraph 30 of the Petition.

31.     Travelers admits the AB Credit Union failed to file a responsive pleading to the original answer and counterclaim or the amended answer and counterclaim in the Underlying Suit.  Travelers is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in paragraph 31 of the Petition and, therefore, denies the same.

32.     Travelers admits the allegations in the first sentence of paragraph 32 of the Petition. Travelers denies the allegations in the second sentence of paragraph 32 of the Petition.

**TRAVELERS' DENIAL OF COVERAGE [*SIC*] AND OBLIGATION TO DEFEND THE AB CREDIT UNION**

33.     Travelers admits it received the AB Credit Union's tender of the Underlying Suit on September 27, 2017 and acknowledged the same on September 29, 2017.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 33 of the Petition.

34.     Travelers admits the allegations in paragraph 34 of the Petition.

35.     Travelers admits that it issued a reservation of rights letter on November 10, 2017, a true and accurate copy of which is attached to the Petition as Exhibit 2 (the "Reservation of Rights Letter").  Travelers denies the allegations in paragraph 35 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Reservation of Rights Letter, which is the best evidence of its contents.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 35 of the Petition.

36.     Travelers denies the allegations in paragraph 36 of the Petition.

37.     Travelers denies the allegations in paragraph 37 of the Petition.

38.     Travelers denies the allegations in paragraph 38 of the Petition.

39.     Travelers denies that any of the damages sought in the Amended Counterclaim are within the coverage of the Primary and/or Umbrella Policies, but otherwise admits the allegations in paragraph 39 of the Petition.

40.     Travelers denies that any of the damages sought in the Amended Counterclaim are within the coverage of the Primary and/or Umbrella Policies, but otherwise admits the allegations in paragraph 40 of the Petition.

41.     Travelers denies the allegations in paragraph 41 of the Petition.

42.     Travelers denies the allegations in paragraph 42 of the Petition.

43.     Travelers denies the allegations in paragraph 43 of the Petition.

44.     Travelers admits that a settlement agreement was reached in the Underlying Suit without Travelers' participation or consent. Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 44 of the Petition.

45.     Travelers admits that a true and accurate copy of the settlement in the Underlying Suit that was approved by the court in that action on July 10, 2018, is attached hereto as Exhibit G (the "Approved Class Settlement").  Travelers denies the allegations in paragraph 45 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Approved Class Settlement, which is the best evidence of its contents.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 45 of the Petition.

46.     Travelers admits that a true and accurate copy of the settlement in the Underlying Suit that was approved by the court in that action on July 10, 2018, is attached hereto as Exhibit H.  Travelers denies the allegations in paragraph 46 of the Petition to the extent they inaccurately or incompletely summarize and/or characterize the Approved Class Settlement, which is the best evidence of its contents.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 46 of the Petition.

47.     The Approved Class Settlement speaks for itself, and Travelers denies the allegations of paragraph 47 of the Petition to the extent that such allegations are inconsistent with the Approved Class Settlement.  Paragraph 47 of the Petition also contains speculative, non-factual assertions and/or legal conclusions, to which no response is required.  Except as expressly admitted herein, Travelers denies the remaining allegations in paragraph 47 of the Petition.

48.     Travelers admits the allegations in the first sentence of paragraph 48 of the Petition. Travelers denies the allegations in the second sentence of paragraph 48 of the Petition.

### COUNT I – BREACH OF CONTRACT

49.     Travelers incorporates by reference its responses to paragraphs 1 through 48 of the Petition as though set forth verbatim herein.

50.     Travelers admits the allegations in paragraph 50 of the Petition.

51.     Travelers admits the allegations in paragraph 51 of the Petition.

52.     Travelers denies the allegations in paragraph 52 of the Petition.

53.     Travelers denies the allegations in paragraph 53 of the Petition.

54.     Travelers admits the allegations in paragraph 54 of the Petition.

55.     Travelers denies the allegations in the first sentence of paragraph 55 of the Petition.  Travelers admits the allegations in the second sentence of paragraph 55 of the Petition, and avers it owes no indemnity under the Primary and/or Umbrella Policies with respect to the settlement agreed to by AB Credit Union and the class claimants.

56.     Travelers denies the allegations in paragraph 56 of the Petition.

57.     Travelers denies the allegations in paragraph 57 of the Petition.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

Travelers hereby incorporates by reference as though fully set forth herein each and every defense set forth in the Additional and Affirmative Defenses below.

WHEREFORE, Travelers hereby respectfully requests that the Court enter judgment in favor of Travelers and against AB Credit Union on this Count, tax costs in favor of Travelers, and award Travelers such other and further relief as the Court deems just and proper.

## COUNT II – BAD FAITH REFUSAL TO DEFEND AND INDEMNIFY

58.     Travelers incorporates by reference its responses to paragraphs 1 through 57 of the Petition as though set forth verbatim herein.

59.     Travelers denies the allegations in paragraph 59 of the Petition to the extent they misstate or mischaracterize the cited statutes, which are the best evidence of their contents.

60.     Travelers admits the allegations in paragraph 60 of the Petition.

61.     Travelers denies the allegations in paragraph 61 of the Petition.

62.     Travelers denies the allegations in paragraph 62 of the Petition.

63.     Travelers denies the allegations in paragraph 63 of the Petition.

64.     Travelers denies the allegations in paragraph 64 of the Petition.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

Travelers hereby incorporates by reference as though fully set forth herein each and every

defense set forth in the Additional and Affirmative Defenses below.

WHEREFORE, Travelers hereby respectfully requests that the Court enter judgment in

favor of Travelers and against the AB Credit Union on this Count, tax costs in favor of Travelers,

and award Travelers such other and further relief as the Court deems just and proper.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

In further defense and response to the allegations contained in the Petition, or as

affirmative defenses to the claims asserted therein, and without assuming the burden of proof or

the burden of persuasion on any issue with respect to which such burden otherwise falls on any

party other than Travelers, Travelers states and alleges as follows:

1.     **Denials Unless Specifically Admitted**.  All allegations of fact and conclusions of

law not specifically admitted herein are denied.

2.     **Failure to State a Claim – Rule 8**.  Without waiving to any extent Travelers'

denials of liability, Travelers expressly denies that the six policies at issue in this suit can be

described clearly or accurately in allegations that purport to refer to all six policies as "the

policy," as does the Petition beginning with its paragraph 8.  In that the Petition premises its

claims against Travelers upon undifferentiated references to the six policies, those allegations

fail to satisfy the requirement of Rule 8(a)(2) that "[a] pleading that states a claim for relief must

contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to

relief[.]" FED. R. CIV. P. 8(a)(2).  The Petition therefore fails to state a claim upon which relief can be granted and should be dismissed.

   3. **Failure of Condition Precedent – Failure of Tender, Communication, and Cooperation Conditions**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded because:[1]

***The AB Credit Union's Complete Failure To Tender Amended Counterclaim***

   a. On July 29, 2015, the AB Credit Union filed a Petition against Wells in the Underlying Suit, in the Circuit Court of the City of Saint Louis, Missouri. Wells did not answer or otherwise defend against that Petition and, on August 27, 2015, a default judgment was entered for the AB Credit Union and against Wells in the amount of $8,316.66 plus costs.

   b. On March 22, 2016, on Wells' motion, the circuit court in the Underlying Suit set aside the default judgment and granted Wells leave to file an answer to the AB Credit Union's Petition.

   c. On April 12, 2016, Wells filed an Answer and Counterclaim in the Underlying Suit alleging a putative consumer class action against the AB Credit Union.

   d. The AB Credit Union did not tender or provide notice of that Answer and Counterclaim to Travelers.

   e. On May 5, 2016, Wells filed an Amended Answer and Counterclaim.  A true and accurate copy of Wells' Amended Answer and Counterclaim (the "Amended Counterclaim"), which is attached to the AB Credit Union's Petition as Exhibit 1, is hereby incorporated by reference into these Additional and Affirmative Defenses as well as Exhibit I.

   f. The AB Credit Union did not tender or provide notice of that Amended Counterclaim to Travelers until September 27, 2017 (the "Non-Tender Period").

***The AB Credit Union's "Defense" During The Lengthy Non-Tender Period***

   g. During the Non-Tender Period, the AB Credit Union failed to timely file an

---

[1] Because the failures of the conditions precedent are so extensive, Travelers has used single spacing solely in the interests of brevity.

answer or other responsive pleading in response to the Amended Counterclaim.

h.  During the Non-Tender Period, the AB Credit Union failed to respond to Wells' discovery.

i.  Still during the Non-Tender Period, on October 28, 2016, the court in the Underlying Suit ordered the AB Credit Union to "answer Wells' First Set of Interrogatories and First Set of Requests for Production in full and without objection by November 4, 2016."

j.  The AB Credit Union did not tender or provide notice to Travelers of the discovery order of October 28, 2016, during the Non-Tender Period.

k.  The AB Credit Union failed to "answer Wells' First Set of Interrogatories and First Set of Requests for Production in full and without objection by November 4, 2016."

l.  On December 16, 2016, still during the Non-Tender Period, the court in the Underlying Suit entered another order stating in part that the AB Credit Union "shall respond to Counterclaimant's [Wells'] discovery by January 9, 2017, or sanctions will be imposed, including the possible striking of pleadings or default judgment." (emphasis in the court's order).

m.  The AB Credit Union did not tender or provide notice to Travelers of this discovery order warning of the imposition of sanctions during the Non-Tender Period.

n.  The AB Credit Union also did not "respond to Counterclaimant's [Wells'] discovery by January 9, 2017," as ordered by the court in the Underlying Suit.

o.  On April 10, 2017, still during the Non-Tender Period, Wells and the AB Credit Union announced to the court in the Underlying Suit that the case was "set for mediation to occur on April 18, 2017."

p.  The AB Credit Union did not tender or provide notice to Travelers during the Non-Tender Period of the mediation referenced in the order of April 10, 2017, in the Underlying Suit.

### *AB Credit Union's Continued Non-Tender After Engaging New Counsel*

q.  During the Non-Tender Period, at some point prior to May 12, 2017, the AB Credit Union engaged new counsel to represent the AB Credit Union in the Underlying Suit.

r.  On June 8, 2017, still during the Non-Tender Period, through its new counsel the AB Credit Union filed a Motion for Leave to File Answer to Defendant's First Amended Counterclaim Out Of Time" in the Underlying Suit (the "AB Credit Union's Motion for Leave").

s.      A true and accurate copy of the AB Credit Union's Motion for Leave of June 8, 2017, is attached hereto and incorporated herein by reference as Exhibit J.

***The AB Credit Union's Admissions Of Prejudice***

t.      Among other representations in the AB Credit Union's Motion for Leave, still during the Non-Tender Period, the AB Credit Union represented to the court in the Underlying Suit that:

> 9.  Plaintiff [the AB Credit Union] will be prejudiced if it is not permitted to file an answer setting forth its specific denials and affirmative defenses, particularly given the scale and scope of Defendant's putative class-action claims.

u.      The next day, on June 9, 2017, and still during the Non-Tender Period, the AB Credit Union served responses to the discovery to which the court, on December 16, 2016, had ordered the AB Credit Union to respond "by January 9, 2017, or sanctions will be imposed, including the possible striking of pleadings or default judgment." (emphasis in the court's order).

v.      Despite the presence of new counsel and the recognition of the pleading and discovery failures of the AB Credit Union, the AB Credit Union did not tender or provide notice to Travelers during the Non-Tender Period that:

> (i) it had engaged new counsel;

> (ii) it had failed to comply with the court's discovery order with it sanction warning on December 16, 2017;

> (iii) it had moved for leave to file an answer out of time; or

> (iv) it would be "prejudiced if it [was] not permitted to file an answer setting forth its specific denials and affirmative defenses, particularly given the scale and scope of Defendant's putative class-action claims."

w.      Still during the Non-Tender Period, the AB Credit Union and Wells jointly set all pending motions in the Underlying Suit for hearing, initially on August 18, 2017, which later was changed to August 30, 2017.

x.      Despite the fact that the AB Credit Union would be prejudiced if the AB Credit Union's Motion for Leave was denied, the AB Credit Union did not tender or provide notice to Travelers during the Non-Tender Period of the motion hearing settings of August 18, 2017, or August 30, 2017.

***The AB Credit Union's Failure To Inform About Mediations***

y.      On August 10, 2017, still during the Non-Tender Period, Wells filed in the Underlying Suit a "Response to Oppose Motion for Leave to File Answer to First

Amended Counterclaim Out of Time" (Wells' "Opposition to Leave").

z.      A true and accurate copy of Wells' Opposition to Leave is attached hereto and incorporated herein by reference as Exhibit K.

aa.      Among other things, in his Opposition to Leave Wells represented to the court in the Underlying Suit that during the two years that the Underlying Suit was pending – all of which was during the Non-Tender Period:

      the AB Credit Union delayed any potential resolution of the case by promising to participate in mediation <u>at least five times</u>, and shortly before (even one time during) mediation, request it be postponed.

      (emphasis added).

bb.      At no point during the Non-Tender Period did the AB Credit Union inform Travelers of any of the, upon information and belief, five prospective mediations in the Underlying Suit.

cc.      At no point during the Non-Tender Period did the AB Credit Union inform Travelers of the mediation in which the AB Credit Union upon information and belief attended prior to August 10, 2017 in the Underlying Suit.

### *The AB Credit Union's Failure To Inform About Sanctions Motion*

dd.      Also, on August 10, 2017, and during the Non-Tender Period, Wells filed a Motion for Sanctions in the Underlying Suit (Wells' "August Sanctions Motion").

ee.      A true and accurate copy of Wells' August Sanctions Motion is attached hereto and incorporated herein by reference as Exhibit L.

ff.      Among other things, in his August Sanctions Motion Wells argued that the AB Credit Union's repeated discovery violations and failure to comply with prior court orders warranted the entry against the AB Credit Union of an Order providing for:

      an interlocutory order of default (reserving decision on class certification and damages); precluding the AB Credit Union from defending against class certification, further default judgment proceedings, summary judgment, or participating in a trial; and for all other relief deemed just under the circumstances.

gg.      In spite of the threat to the AB Credit Union posed by the various motions pending for hearing in August 2017, the AB Credit Union did not tender or provide notice to Travelers during the Non-Tender Period of:

      (i) The AB Credit Union's Motion for Leave;

          (ii) Wells' Opposition to Leave; or

          (iii) Wells' August Sanctions Motion.

hh.    On August 29, 2017, the day before the hearing on all pending motions in the Underlying Suit – and still during the Non-Tender Period – the AB Credit Union filed reply suggestions in support of AB Credit Union's Motion for Leave (the AB Credit Union's "Reply In Support Of Leave").

ii.    A true and accurate copy of the AB Credit Union's Reply In Support Of Leave is attached hereto and incorporated herein by reference as Exhibit M.

### *The AB Credit Union's Admission Of Substantial Prejudice*

jj.    Among other representations in the AB Credit Union's Reply In Support of Leave filed on August 29, 2017, and still during the Non-Tender Period, the AB Credit Union represented to the court in the Underlying Suit that:

> In any event, any prejudice to Wells that would result from the Court granting leave to ABECU to file a written answer – which would be minimal, if any – would be far outweighed by the prejudice to ABECU if it were not permitted to file a written answer. Wells is attempting to assert a nationwide class action lawsuit and will, presumably, seek millions of dollars in damages. ABECU intends to present meritorious affirmative defenses to Wells' claims, and Wells has not suggested otherwise. The circumstances are such that the Court should exercise its discretion to allow ABECU to file its proposed written answer setting forth its specific denials and affirmative defenses to these claims.

kk.    A true and accurate copy of the answer tendered by the AB Credit Union's new counsel, containing those "meritorious affirmative defenses to Wells' claims," is attached hereto and incorporated herein by reference as Exhibit N.

ll.    As of August 29, 2017, the day before the hearing on all pending motions in the Underlying Suit, the AB Credit Union still had not tendered to or provide notice to Travelers during the Non-Tender Period <u>of at least</u> the following facts which are established by the pleadings in the court docket for the Underlying Suit:

          (i) the discovery order in the Underlying Suit of October 28, 2016;

          (ii) the discovery order in the Underlying Suit of December 16, 2016, warning that if the AB Credit Union failed to comply "sanctions will be imposed, including the possible striking of pleadings or default judgment[]";

          (iii) the failing by the AB Credit Union to comply with the discovery order

in the Underlying Suit of December 16, 2016;

(iv) the fact that the AB Credit Union had engaged new counsel;

(v) the AB Credit Union's Motion for Leave;

(vi) the fact that the AB Credit Union would be "prejudiced if it [was] not permitted to file an answer setting forth its specific denials and affirmative defenses, particularly given the scale and scope of Defendant's [Wells'] putative class-action claims[]";

(vii) the apparent five then-prior opportunities to mediate the claims against the AB Credit Union;

(viii) the apparent mediation in which the AB Credit Union participated prior to August 10, 2017;

(ix) Wells' opposition to the AB Credit Union's Motion for Leave;

(x) Wells' August Sanctions Motion in which Wells' sought, among other things, "an interlocutory order of default (reserving decision on class certification and damages); precluding the AB Credit Union from defending against class certification, further default judgment proceedings, summary judgment, or participating in a trial; and for all other relief deemed just under the circumstances[]";

(xi) the AB Credit Union's repeated representation to the court in the Underlying Suit that "any prejudice to Wells that would result from the Court granting leave to ABECU to file a written answer – which would be minimal, if any – would be far outweighed by the prejudice to ABECU if it were not permitted to file a written answer. Wells is attempting to assert a nationwide class action lawsuit and will, presumably, seek millions of dollars in damages. ABECU intends to present meritorious affirmative defenses to Wells' claims, and Wells has not suggested otherwise. The circumstances are such that the Court should exercise its discretion to allow ABECU to file its proposed written answer setting forth its specific denials and affirmative defenses to these claims[]"; or

(xii) the multiple settings for hearings on all of the pending motions in the Underlying Suit.

mm. On August 30, 2017, still during the Non-Tender Period, the circuit court in the Underlying Suit entered an Order denying the AB Credit Union's request to file an answer out of time and prohibiting the AB Credit Union from asserting any affirmative defenses to the Amended Counterclaim.

nn. The Order of August 30, 2017, also required Wells and the AB Credit Union to

17

participate in another mediation within 30 days.

oo.    A true and accurate copy of the court's Order in the Underlying Suit of August 30, 2017, is attached hereto and incorporated herein by reference as Exhibit O.

### *The AB Credit Union's Failure To Inform About The Crippling Ruling Of August 30, 2017*

pp.    After the entry of the above-referenced Order of August 30, 2017, all of Wells' allegations concerning liability were deemed admitted and the AB Credit Union was barred from asserting any affirmative defenses.  The only remaining open issues in the Underlying Suit were class certification and damages.

qq.    Despite the disastrous ruling against it on August 30, 2017, and despite the fact that it was required to participate in yet another mediation of the matter by September 29, 2017, the AB Credit Union still did not tender or provide notice to Travelers of any of the above until September 27, 2017.

rr.    Travelers' receipt of this tender was <u>the first notice</u> received by Travelers of any of the claims made against the AB Credit Union in the Underlying Suit.

### *The AB Credit Union's  Duties To  Travelers*

ss.    The Primary Policies impose certain duties on the AB Credit Union in the event a claim or suit is filed against it, the violation of which is a failure of a condition precedent to coverage.  Specifically, the Primary Policies provide that the AB Credit Union has, among others, the following "[d]uties in the event of occurrence, offense, claim or suit":

   a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

      (1)    How, when and where the "occurrence" or offense took place;

      (2)    The names and addresses of any injured persons and witnesses; and

      (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b.    If a claim is made or "suit" is brought against any insured, you must:

      (1)    Immediately record the specifics of the claim or "suit" and the date received; and

(2)      Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.      You and any other involved insured must:

(1)      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)      Authorize us to obtain records and other information;

(3)      Cooperate with us in the investigation or settlement of the claim of defense against the "suit"; and

(4)      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.      No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

tt.      The Umbrella Policies impose certain duties on the AB Credit Union in the event a claim or suit is filed against it, the violation of which is a failure of a condition precedent to coverage.  Specifically, the Umbrella Policies provide that the AB Credit Union has, among others, the following "[d]uties in the event of occurrence, offense, claim or suit":

a.      You must see to it that we are notified promptly of an "occurrence" or an "offense" which may result in a claim under this insurance. Notice should include:

(1)      How, when and where the "occurrence" or "offense" took place; and

(2)      The names and addresses of any injured persons and witnesses.

b.      If a claim is made or "suit" is brought against any insured which may result in a claim against this insurance, you must see to it that we receive prompt written notice of the claim or "suit".

c.   The insured must:

(1)   Cooperate with the "underlying insurers";

(2)   Comply with the terms of the "underlying insurance"; and

(3)   Pursue all rights of contribution or indemnity against any person or organization who may be liable to the insured because of "bodily injury", "property damage", "personal injury" or "advertising injury" with respect to which insurance is provided under this or any policy of "underlying insurance".

d.   When we believe that a claim may exceed the "underlying insurance", we may join with the insured and the "underlying insurer" in the investigation, settlement and defense of all claims and "suits" in connection with such "occurrence" or "offense".  In such event, the insured must cooperate with us.

### The Failures Of The Above Conditions Precedent Bar Coverage

uu.   Even if there had been any duty to indemnify any portion of the settlement in the Underlying Suit, any such coverage would be and is precluded, barred, and otherwise was not triggered due to the failure of conditions precedent to the same in that the AB Credit Union's failure to notify, tender, communicate, and cooperate as required by the Primary and Umbrella Policies.

vv.   Travelers was prejudiced substantially by the failure of the AB Credit Union to comply with the above referenced conditions in that, among other things, by the time Travelers had received the untimely tender, the AB Credit Union already was deemed (by virtue of having no answer on file) to have waived all affirmative defenses and admitted liability in the Underlying Suit, and had lost the ability to assert any of the affirmative defenses to the Amended Counterclaim on the merits, leaving as the object of its untimely tender a massive class action with respect to which it had no remaining settlement leverage and virtually no defenses aside from the certification questions and damages exposure, with respect to both of which the AB Credit Union's defenses were substantially impaired by its pre-tender failure to answer.

ww.   Among the AB Credit Union's forfeited defenses that are known at this time are: statutes of limitations; accidental and bona fide error under the Uniform Commercial Code; substantial compliance with Article 9 of the Uniform Commercial Code and other provisions of law; failure to mitigate damages; waiver, estoppel, ratification, and consent; contributory fault; good-faith

purchases for value; holders in due course; double recovery and election of remedies; offset and recoupment; lack of ability to communicate with certain class members; accord and satisfaction; prior breach; lack of standing; res judicata, collateral estoppel, and full faith and credit; superseding and intervening causes; unjust enrichment; good faith; non-consumer use; and numerous constitutional defenses.

xx.     Additionally, the AB Credit Union's failure to notify, tender, communicate, and cooperate as required by the Primary and Umbrella Policies substantially prejudiced Travelers in that they were deprived of any meaningful opportunity to: (i) investigate the claim at the time of the filing of the Amended Counterclaim and, for that matter, the relevant circumstances as they existed during the time following the filing of the Amended Counterclaim during which the AB Credit Union might have been allowed to file an answer and affirmative defenses; (ii) analyze the relevant circumstances as they existed during those same time frames; (iii) mitigate its potential damages, such as removing alleged derogatory credit reporting at a much earlier date; and (iv) investigated and taken other actions during that time period to strengthen its litigation and settlement positions.

yy.     Additionally, the AB Credit Union's failure to notify, tender, communicate, and cooperate as required by the Primary and Umbrella Policies substantially prejudiced Travelers in that the discovery rulings that were entered prior to any notice to Travelers left the AB Credit Union exposed to the possibility that its communications with its own defense counsel would be discoverable by the class, hampering the AB Credit Union's ability to prepare and execute on defense and settlement strategies as well as to keep Travelers informed with respect to the same.

zz.     The AB Credit Union's untimely notice and tender and breach of its related duties under the Primary Policies and the Umbrella Policies denied Travelers the opportunity evaluate any potential or alleged duty to defend at a time when Travelers could have provided the AB Credit Union with a meaningful and timely evaluation of coverage and, possibly, a meaningful and productive defense on the merits and with respect to Wells' claim on the merits as well as the merits that bear on the putative class claims, and at a time when Travelers might have addressed the potential settlement of the claims against the AB Credit Union before the AB Credit Union had permitted its exposure on those claims to grow to its greatest level.

aaa.    Accordingly, Travelers suffered substantial prejudice from the AB Credit Union's failure to notify, tender, communicate, and cooperate.

bbb.    As a consequence, even if some portion of the claims in the Amended Counterclaim were within the potential coverage of the Primary Policies or the Excess Policies, there nevertheless would be no coverage for the same as a matter of law due to the AB Credit Union's untimely notice and tender and breach of its related duties under the Primary Policies and the Umbrella Policies.

4.    **No Duty to Pay Defense Costs Incurred During the Non-Tender Period**.

Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  As an insured can only trigger an insurer's duty to defend by tendering the defense of an underlying action, Travelers cannot be liable for breach of contract for failure to pay defense costs incurred during the Non-Tender Period.

5.    **No Refusal to Pay Defense Costs Incurred After the Non-Tender Period**.

Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  At no time did Travelers refuse to defend the AB Credit Union in the Underlying Suit.  On the contrary, its November 10, 2017 letter expressly accepted the AB Credit Union's prejudicially late tender while reserving its right to later deny coverage.  Accordingly, Travelers asked the AB Credit Union for information regarding the defense expenses it incurred after the Non-Tender Period, so that Travelers could pay those expenses, or, if other insurers were participating, its share of the same.  However, the first time the AB Credit Union provided Travelers with its copies of its defense expenses was August 31, 2018, more than a month *after* the AB Credit Union filed this coverage action.  Indeed, prior to its August 31, 2018 transmission of defense counsel's invoices, the AB Credit Union never even discussed them with Travelers or requested that Travelers pay any portion of them.  Since that time, Travelers has begun the payment process to pay all of the post-tender defense-related fees and expenses.  Based on the AB Credit Union's prejudicial failure to tender the Underlying Suit for eighteen months and because, regardless, as set forth below, the Amended Counterclaim did not allege any damages within the coverage of the AB Credit Union's policies, Travelers did not have a duty to defend the Underlying Suit in the first place.  Nevertheless, in providing a courtesy defense to the AB Credit

22

Union following the Non-Tender Period, Travelers has performed all of its duties under each of the Primary and/or Umbrella Policies as though it did have a duty to defend.

6.     **No Bodily Injury.**   Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded because the Underlying Suit did not allege a claim for "bodily injury."

     a.     In each of the Primary Policies, the "Insuring Agreement" for bodily injury and liability coverage provides, in part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

     b.     In each of the Umbrella Policies, the "Insuring Agreement" provides in part that:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury," . . . to which this insurance applies.

     c.     The Primary and Umbrella Policies define "Bodily Injury" as:

> Physical harm, including sickness or disease, sustained by a person; or mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

     d.     The Underlying Suit did not allege a claim for physical harm, sickness, or disease.

     e.     The Underlying Suit did not allege a claim for mental anguish, injury or

illness, or emotional distress resulting from physical harm, sickness, or disease.

   f.  Accordingly, there is no potential coverage for "bodily injury" under the

Primary or Umbrella Policies.

7. **No Property Damage**

a. In each of the Primary Policies, the "Insuring Agreement" for the property

  damage liability coverage provides, in part:

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "property damage" . . . to which this
> insurance applies. We will have the right and duty to defend the
> insured against any "suit" seeking those damages.  However, we
> will have no duty to defend the insured against any "suit" seeking
> damages for "property damage" . . . to which this insurance does
> not apply. We may, at our discretion, investigate any "occurrence"
> and settle any claim or "suit" that may result.

b. In each of the Umbrella Policies, the "Insuring Agreement" provides in part that:

> We will pay on behalf of the insured the "ultimate net loss" in
> excess of the "applicable underlying limit" which the insured
> becomes legally obligated to pay as damages because of "property
> damage," . . . to which this insurance applies.

c. The term "property damage" means

> (a) Physical damage to tangible property of others, including all
> resulting loss of use of that property.  All such loss of use will be
> deemed to occur at the time of the physical damage that caused it;
> or
> (b) Loss of use of tangible property of others that is not physically
> damages. All such loss of use will be deemed to occur at the time
> of the "occurrence" that cause it.

d. The Underlying Suit did not seek damages because of "property damage" covered

  by the Primary and Umbrella Policies

8. **No Bodily Injury or Property Damage Caused by an Occurrence**.  Travelers

hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further

states that each and every claim and cause of action the AB Credit Union attempts to assert in

this action is barred, estopped, and otherwise precluded because the Underlying Suit did not allege a claim for "bodily injury" or "property damage" that was caused by an "occurrence."

      a.      The Primary and Umbrella Policies only apply to "bodily injury" or "property damage" that is caused by an "occurrence."

      b.      The Primary and Umbrella Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

      c.      The term "accident" means an event that takes place without one's foresight or expectation; an undersigned, sudden and unexpected event.  Thus, the determinative inquiry into whether there was an "occurrence" or "accident" is whether the insured foresaw or expected the injury or damage.

      d.      To the extent that any "bodily injury" or "property damage" may have been sustained, it was not the result of an "occurrence." AB Credit Union's act of repossessing vehicles was not accidental.  The AB Credit Union indisputably foresaw, understood and expected that its acts of repossession would result in the loss of use of the repossessed vehicles.

      e.      The fact that the AB Credit Union's exercise of dominion and control over those vehicles was intentional is not altered by a determination that its exercise of dominion or control was or was not legally justified.

      f.      Because any "bodily injury" or "property damage"  suffered by the class claimants was not caused by an "occurrence," there was no potential coverage for the claims against the AB Credit Union in the Underlying Suit under the "bodily injury" or "property damage" provisions in the Primary and Umbrella Policies.

9.     **No Coverage Due To The "Expected or Intended Injury" Exclusion**.

Travelers hereby incorporates its previous defenses as though set forth verbatim herein.

Travelers further states that each and every claim and cause of action the AB Credit Union

attempts to assert in this action is barred, estopped, and otherwise precluded, because even if the

Amended Counterclaim did allege and the amounts paid as damages under the class settlement

did include "bodily injury" or "property damage" that was caused by an "occurrence," there

would still be no coverage for the same due to the exclusion for "expected or intended injury."

a.      Each of the Primary and Umbrella Policies contains an exclusion

providing that potential coverage for property damage does not apply to "bodily injury"

or "property damage" expected or intended from the standpoint of the insured.

b.      The exclusion for "expected or intended injury" applies if it is shown that

the insured intended the acts that are alleged to have caused the "bodily injury" or

"property damage" and the "bodily injury" or "property damage" was the expected

consequence of the acts.

c.      As with the "occurrence" analysis, a reasonable person standing in the

shoes of the AB Credit Union would indisputably *expect and intend* that the act of

repossession would result in the class claimants' loss of control over their vehicles.

d.      It is well established that when an intentional act results in injuries which

are the natural and probable consequence of the act, *the injuries and the act* are

intentional.

e.      To the extent there is "bodily injury"or "property damage" potentially at

issue in the Underlying Suit, such "bodily injury" or "property damage" was the

intended, foreseeable, logical and inevitable consequences of the AB Credit Union's

intentional act of repossession.

      f.     Accordingly, there was no potential coverage for the claims against the AB Credit Union in the Underlying Suit under the "bodily injury" or "property damage" provisions in the Primary and Umbrella Policies because the exclusion for "expected or intended injury" clearly applies to any damages in the Underlying Suit.

10.    **<u>No Coverage Due To The "Care, Custody or Control" Exclusion.</u>**  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded because, even if the Amended Counterclaim did allege and the amounts paid as damages under the class settlement did include "property damage" that was caused by an "occurrence," there would still be no coverage due to the exclusion for property damage to personal property in the "care, custody or control" of the insured.

      a.     Each of the Primary and Umbrella Policies contains an exclusion providing in part that potential coverage for property damage does not apply to "property damage" to personal property in the care, custody, or control of the insured.

      b.     Thus, the "care, custody or control" exclusion applies if the "property damage" at issue took place while the personal property was within the AB Credit Union's "care, custody or control."

      c.     Accordingly, there was no potential coverage for the claims against the AB Credit Union in the Underlying Suit under the "property damage" provisions in the Primary and Umbrella Policies because the "care, custody or control" exclusion would apply and preclude potential coverage for all such claims in that any "loss of use"

happened while the vehicle was in the AB Credit Union's care, custody, or control.

11.     **No Coverage For Bodily Injury or Property Damage Occurring Outside Travelers' Policy Periods**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that, even if the Amended Counterclaim did seek damages because of "bodily injury" or  "property damage" caused by an "occurrence" which was not otherwise barred by policy exclusions, most, if not all of that "bodily injury" or "property damage" would not be covered  as the "bodily injury" or "property damage"  did could not have be sustained within the policy periods of any of the  Primary Policies and/or Umbrella Policies.

      a.     The "Insuring Agreements" to the Primary and Umbrella Policies state that:

> This insurance applies to "bodily injury" and "property damage" only if:
>
> \*\*\*
> The "bodily injury" or "property damage" occurs during the policy period. \*\*\*

      b.     The Primary and Umbrella Policies define "property damage" to include "loss of use," but further define that loss of use as having occurred at the time of the "occurrence" that allegedly caused it.

      c.     The claims in the Underlying Suit included a large number of claims by members whose respective vehicles were repossessed prior to any of the  policy periods.

      d.     To the extent there otherwise might be potential coverage for "property damage" claims as alleged in the Underlying Suit, the same does not include any for which the alleged loss of use occurred  prior to the policy periods of the Travelers' policies.

12.    **No  Advertising Injury**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded because the Underlying Suit did not allege a claim for "advertising injury."

a.    In each of the Primary Policies, the "Insuring Agreement" for advertising injury liability coverage provides in part that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

b.    In each of the Umbrella Policies, the "Insuring Agreement" provides in part that:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

c.    Each of the Primary Policies defines "personal and advertising injury" as "personal injury" or "advertising injury."

d.    The Primary and Umbrella Policies define "advertising injury" as:

> Injury, other than "personal injury", caused by one or more of the following offenses:
>
> (1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

(2) Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

(a) Appropriates a person's name, voice, photograph or likeness; or

(b) Unreasonably places a person in a false light;[2]

(3) Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan". ***

(emphasis added).

e.      The Primary and Umbrella Policies define "advertisement" as:

A notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

f.      The Underlying Suit did not allege a claim based on the publication of an "advertisement" because none of the alleged publications regarding the class claimants or their repossessed vehicles were broadcast for the purpose of attracting customers or supporters.

g.      Accordingly, no damages because of  "advertising injury" were sought in the Underlying Suit.

13.     **No Coverage For Personal Injury Excluded By The "Financial Services"**

**Exclusion**.  Travelers hereby incorporates its previous defenses as though set forth verbatim

---

[2]In the 2014-15 Primary and Umbrella Policies, "advertising injury" is also defined as "Oral or written publication, including publication by electronic means, of material in your "advertisement" that . . . '(c) Discloses information about a person's private life.'"

herein.  Travelers further states that each and every claim and cause of action the AB Credit

Union attempts to assert in this action is barred, estopped, and otherwise precluded because any

potential coverage for "personal injury" alleged in the Underlying Suit is barred by the

"Professional Credit Union Financial Services"[3] exclusion, which was added by endorsement to

the each of Primary and Umbrella Policies.

> a. The Professional Credit Union Financial Services exclusion bars coverage
> for "personal injury" arising out of providing or failing to provide professional "credit
> union financial services."  However, the Financial Services exclusion does not apply to
> "personal injury" arising out of any "typographical error" or "clerical error in any deposit
> into or withdrawal from any customer's account."

> b. The Primary and Umbrella Policies define "credit union financial
> services" to include:

>> a. Any of the services that any insured provides or is required
>> to provide for any insured's customer, including insurance
>> services, investment services, real estate services, tax
>> services, trust services and other similar services, under:

>>> (1) An agreement between any insured and the
>>> customer; or

>>> (2) A written contract or agreement between the
>>> insured and a third party in which any insured
>>> agrees to provide such services for the customer on
>>> behalf of the third party;

>> b. Planning, managing, administering, advising on or acting in
>> a fiduciary capacity for any deposit account;

---

[3] The 2014-15 Umbrella Policy uses the phrase "Professional Community Bank Financial Services" instead of "Professional Credit Union Financial Services," but the exclusion is otherwise identical.  For the sake of simplicity, Travelers will refer to the exclusions as the "Financial Services" exclusions.

      c.      Evaluating, analyzing, administering, managing, advising on or servicing, or providing opinions or instructions in connection with, any of the following operations or activities:

           (1)     Lending, leasing or extension of credit; or

           (2)     Credit card or debit card;

      d.      Checking or reporting of credit;

      e.      Maintaining or providing information concerning any financial account, record or balance;

      f.      Selling or issuing any travelers check, certified check, bank check, money order, other similar monetary instrument or money transfer; or

      g.      Administering or leasing any safe deposit or lock box.

      c.      To the extent the Underlying Suit alleges or the Approved Class Settlement involves "personal injury" as a result of the AB Credit Union's wrongful acceleration of their indebtedness, its wrongful repossession of their vehicles, its wrongful disposition of their collateral, and its wrongful credit reporting activities, or other allegedly wrongful conduct, those injuries necessarily arose out of providing or failing to provide professional "credit union financial services" in that, at minimum, the AB Credit Union's wrongdoing would involve: "evaluating, analyzing, administering, managing, advising on or servicing, or providing opinions or instructions in connection with . . . lending, leasing or extension of credit"; "checking or reporting of credit"; and "maintaining or providing information concerning any financial account, record or balance."

      d.      None of the claims in the Underlying Suit arose out of the AB Credit Union's "typographical error" or a "clerical error in any deposit into or withdrawal from any customer's account."

e.      Accordingly, the Financial Services exclusion precludes coverage for any damages because of "personal injury" that might otherwise have been at issue in the allegations in the Underlying Suit or in the Approved Class Settlement.

14.      **"Knowing Violation of Rights of Another" Exclusion**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded to the extent any damages because of "advertising injury" or "personal injury" sought in the Underlying Suit is barred by the "Knowing Violation of Rights of Another" exclusion.

a.      Each of the Primary and Umbrella Policies contains an exclusion providing that potential coverage for personal injury does not apply to "advertising injury" or "personal injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury."

b.      To the extent the facts ultimately show that the AB Credit Union acted knowingly, and not merely negligently or recklessly, any coverage for damages because of "advertising injury" or "personal injury" would be precluded by the "Knowing Violation of Rights of Another" exclusion.

15.      **"Material Published With Knowledge of Falsity" Exclusion**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded to the extent any damages because of

"advertising injury" or "personal injury" sought in the Underlying Suit is barred by the "Material Published With Knowledge of Falsity" exclusion.

     a.     Each of the Primary and Umbrella Policies contains an exclusion providing that potential coverage for personal injury does not apply to "advertising injury" or "personal injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

     b.     To the extent the facts ultimately show that the AB Credit Union published notices and transmitted credit data with knowledge that the information was not true, coverage for any damages because of "advertising injury" or "personal injury" would be precluded by the "Material Published With Knowledge of Falsity" exclusion.

16.    **"Material Published Prior to Policy Period" Exclusion**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Travelers further states that each and every claim and cause of action the AB Credit Union attempts to assert in this action is barred, estopped, and otherwise precluded to the extent any damages because of "advertising injury" or "personal injury" sought in the Underlying Suit is barred by the "Material Published Prior to Policy Period" exclusion.

     a.     Each of the Primary and Umbrella Policies contains an exclusion providing that potential coverage for personal injury does not apply to "advertising injury" or "personal injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

     b.     To the extent any damages sought because of to "advertising injury" or "personal injury" in the Underlying Suit arose out of oral or written publication of material whose first publication took place before the beginning of the policy period,

coverage for same is barred restricted by the "Material Published Prior to Policy Period" exclusion.

17.     **Relief outside the scope of coverage**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  To the extent the Amended Counterclaim sought and the settlement provides for equitable relief, declaratory relief, statutory damages, and punitive damages—whether such relief was included in the class settlement either explicitly or implicitly—none of the same are insured under the Primary or Umbrella Policies.

18.     **No recovery is available for non-damage items claimed as "losses."**  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  To the extent the AB Credit Union is seeking to recover under the indemnification provisions in the policies at issue herein anything other than the alleged $19,750,000 actually paid by the AB Credit Union pursuant to the Approved Class Settlement, the AB Credit Union fails to state a claim upon which relief can be granted and otherwise is barred, estopped and otherwise precluded from any recovery because the same is not within the scope of the insuring provisions of the policies at issue in this suit.

a.     In each of the Primary Policies, the "Insuring Agreement" for advertising injury liability coverage provides in part that:

> We will pay <u>those sums that the insured becomes legally obligated to pay as damages</u> because of "personal and advertising injury" to which this insurance applies.

b.     In each of the Umbrella Policies, the "Insuring Agreement" provides in part that:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit" <u>which the insured becomes legally obligated to pay as damages</u> because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

       c.     The documents filed in the Underlying Suit in connection with the settlement that the AB Credit Union negotiated without notice to or participating by Travelers provides for the AB Credit Union to "pay" only "$19,750,000 in money[.]" "Write-offs" of deficiency balances and uncollected judgments, and acts taken to delete negative information from credit reports are not "damages."

19.    **<u>Non-Cumulation of Property Damage Indemnity Obligations</u>**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  To the extent the AB Credit Union is liable for "bodily injury" or "property damage" during  multiple policy periods, the "Each Occurrence Limit" in each of the Primary and Umbrella Policies is reduced in accordance with the following "Limits of Insurance" provisions.

       a.     The Primary Policies provide, in pertinent part:

> If one "occurrence" causes … "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

       b.     The Umbrella Policies provide, in pertinent part:

> If one "occurrence" causes … "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial excess liability (umbrella) insurance policy for the insured issued by us or any affiliated insurance company, the amount we will pay is limited.  This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence."

> To determine the limit of our liability, all …"bodily injury" or "property damage" arising out of continuous or repeated exposure to the same general conditions shall be considered one "occurrence."

c.      To the extent the Underlying Suit sought damages because of "bodily injury" or property damage in multiple policy periods arising from the same "occurrence," Travelers' limits of insurance under the Primary and Umbrella Policies are reduced in accord with the foregoing Limits of Insurance provision.

20.     **Non-Cumulation of Personal Injury Indemnity Obligations**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  To the extent the AB Credit Union is liable for "advertising injury" or "personal injury" across multiple policy periods, the "Personal and Advertising Injury Limit" in each of the Primary and Umbrella Policies is reduced in accordance with the following "Limits of Insurance" provisions.

a.      The Primary Policies provide, in pertinent part:

> If "advertising injury" or "personal injury" … is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited.  This policy's Personal and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury"***

b.      The Umbrella Policies provide, in pertinent part:

> If "advertising injury" or "personal injury" … is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial excess liability (umbrella) insurance policy for the insured issued by us or any affiliated insurance company, the amount we will pay is limited.  This policy's Personal and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury[.]"***

c.      To the extent the Underlying Suit sought damages because of  "advertising injury" or "personal injury" sustained by a single person across multiple policy periods, Travelers' limits of insurance under the Primary and Umbrella Policies

are reduced in accord with the foregoing Limits of Insurance provision.

21.    **Credit and Offset for Contributions of Other Insurers**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  This defense is pled in the alternative.  Upon information and belief, several other insurers have made payments to the AB Credit Union, or have agreed to make payments, for use in the AB Credit Union's indemnity against the amounts to which it became liable in the class action settlement, all negotiated without Travelers' participation or consent, in amounts currently unknown.  To the extent those payments have reduced or will reduce the AB Credit Union's actual burden to fund the class action settlement, Travelers is entitled to the benefit of those payments in the form of an offset or credit toward any indemnity obligation owed to the AB Credit Union so that the AB Credit Union is not enriched by its own wrongdoing.

22.    **Credit and Offset for Defense Costs Reimbursed by Other Insurers**. Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Upon information and belief, the AB Credit Union maintained that other insurers were obligated to provide for the defense of the AB Credit Union during the same period in which the AB Credit Union demanded a defense from Travelers.  Alternatively, upon information and belief, other insurers made payments to (or on behalf of) the AB Credit Union or have agreed to make payments to (or on behalf of) the AB Credit Union, for the AB Credit Union's costs of defense in the Underlying Suit with respect to the same period in which the AB Credit Union demanded a defense from Travelers.  To the extent the AB Credit Union compromised and released its claims for those defense costs, it did so without Travelers' knowledge, permission or consent, despite Travelers' agreement to defend the AB Credit Union subject to a reservation of rights.  To that extent, or to the extent of any payments from other insurers, Travelers is entitled to the benefit of

the same in the form of an offset or credit toward any defense obligation owed by Travelers to the AB Credit Union so that the AB Credit Union is not enriched by its own wrongdoing.

23.   **No Vexatious Refusal to Defend or Indemnify**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Based on the AB Credit Union's prejudicial failure to tender or otherwise notify Travelers about the Underlying Suit for eighteen months and because, regardless, as set forth below, the Amended Counterclaim did not seek any damages within the coverage of the AB Credit Union's policies, Travelers had no  duty to defend the Underlying Suit in the first place.  Travelers nevertheless provided a defense.  In addition, the foregoing defenses show that Travelers had no duty to defend or indemnify the AB Credit Union for the Approved Class Settlement.  Accordingly, Travelers cannot be liable under sections 379.296 and 379.420.

24.   **No Vexatious Refusal for "Third-Party" Claims**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  Sections 379.296 and 379.420 do not apply to third-party claims.  An insurer cannot be liable for vexatious refusal to pay an insured's liability on a claim unless, if at all, until that claim is liquidated by settlement or judgment.  Similarly, an insurer cannot be liable for vexatious refusal to reimburse an insured's defense expenses until the insured actually has paid them.  To the extent the AB Credit Union had not yet paid any of the defense or indemnity amounts at issue before filing this action, Travelers cannot be liable for vexatious refusal.  In that event, the AB Credit Union's sole remedy is breach of contract.

25.   **No Vexatious Refusal Due to Good Faith Coverage Position**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  The vexatious refusal statutes upon which Count II is premised are penal in nature.  Where an insurer acts in good

faith, it cannot be penalized for requiring a judicial determination of questions of law or fact that there is reasonable cause to believe bear on its obligation to pay a claim. The foregoing defenses, at minimum, demonstrate a number of questions of law or fact that bear on Travelers' coverage obligations. At all times Travelers acted reasonably and in good faith, even agreeing to defend AB Credit Union, despite untimely notice and tender of the defense the Underlying Suit—which was eighteen months late and highly and unfairly prejudicial to Travelers. Because Travelers requires a judicial determination of questions of law or fact that there is reasonable cause to believe bear on its alleged duties to the AB Credit Union, it cannot be liable for vexatious refusal.

26.   **No Vexatious Refusal for Pre-Tender Defense Costs.**  Travelers hereby incorporates its previous defenses as though set forth verbatim herein. Travelers could not have been obligated to defend the Underlying Suit in the absence of a tender.   To the extent the AB Credit Union alleges that Travelers is liable for vexatious refusal to pay or contribute to its defense costs incurred during the Non-Tender Period, that claim should be dismissed.

27.   **No Vexatious Refusal for Post-Tender Defense Costs**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein. At no time did Travelers refuse to defend the AB Credit Union in the Underlying Suit. On the contrary, its November 10, 2017 letter expressly agreed to defend AB Credit Union while reserving its right to later deny coverage. Accordingly, Travelers asked the AB Credit Union for information regarding the defense expenses it incurred after the Non-Tender Period, so that Travelers could pay those expenses, or, if other insurers were participating, its share of the same. However, the first time the AB Credit Union provided Travelers with its copies of its defense expenses was August 31, 2018, more than a month *after* the AB Credit Union filed this coverage action.

28.   **No Vexatious Refusal for the Approved Class Settlement**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  The AB Credit Union's vexatious refusal to indemnify claim is premised on Travelers' non-payment of Approved Class Settlement, entered on July 10, 2018—*six days* before this action was filed.  Even assuming that the AB Credit Union immediately funded the Approved Class Settlement, and assuming further that coverage existed, the AB Credit Union cannot establish that Travelers is liable for vexatious refusal.  By its terms, an action under section 375.296 cannot be maintained unless the indemnity amount at issue was not paid "for a period of thirty days after due demand . . . prior to the institution of the action."  Although section 375.420 does not include an explicit thirty-day requirement like section 375.296, Missouri law requires them to be construed *in pari materia* because both statutes relate to the same subject and should be construed as though constituting one act.  Travelers cannot be liable to the AB Credit Union for "vexatiously refusing" to indemnify a possibly unfunded settlement agreement *six days* after it was approved by the court.

29.   **All Policy Provisions**.  Travelers hereby incorporates its previous defenses as though set forth verbatim herein.  All claims alleged against Travelers are subject to all the exclusions, conditions, limitations, definitions, and other terms and provisions of the Primary and Umbrella Policies.

30.   **Reserved Rights**.  Travelers reserves its right to assert additional or supplemental defenses and claims, whether affirmative defenses or otherwise, that may be revealed as this matter progresses.

WHEREFORE, having fully answered, Travelers respectfully prays that the Court dismiss each and every claim and Count in the Petition or, alternatively, enter judgment in favor of Travelers and against the AB Credit Union on each and every claim and Count, tax costs in

favor of Travelers, and award Travelers such other and further relief as the Court deems just and proper.

## COUNTERCLAIM FOR DECLARATORY JUDGMENT

Defendants/Counterclaim Plaintiffs TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers Property") and THE CHARTER OAK FIRE INSURANCE COMPANY ("Charter Oak") (collectively "Travelers"), by and through counsel and pursuant to 28 U.S.C. § 2201, and for their Counterclaim for Declaratory Judgment against Plaintiff/Counterclaim Defendant ANHEUSER BUSCH EMPLOYEE CREDIT UNION (the "AB Credit Union"), state and allege as follows:

## NATURE OF ACTION

1.      In paragraph 47 of its state-court petition, the AB Credit Union alludes to potential, unknown claims that could form the basis of further disputes between the parties, alleging that:

> Despite the settlement, there may be additional borrowers whose potential claims are not resolved by the settlement.  Accordingly, these additional borrowers could still bring claims against [the AB Credit Union].

However, in spite of that allegation, the AB Credit Union does not plead further or seek any affirmative relief with respect to those potential claims. *See* Pet. ¶¶ 50-57, 59-64.  Travelers respectfully submits that it is entitled to closure on all alleged controversies between the parties related to the claims in the Underlying Suit brings this counterclaim for the narrow purpose of seeking declaratory relief as to all the alleged potential claims to which the AB Credit Union refers in its Petition without seeking relief in that the same is consistent with the purposes of the declaratory judgment statute and the general prohibition on redundant, mirror image

counterclaims. *See, e.g.*, *Amwest Sur. Ins. Co. v. Concord Bank*, 2003 WL 553229, at *4 (E.D. Mo. Feb. 4, 2003).

### INCORPORATION BY REFERENCE

2. In an effort to simplify this pleading, Travelers will allege its coverage positions by reference to its additional and affirmative defenses rather than plead them verbatim herein which would render this already lengthy pleading unnecessarily longer.  However, should either the Court or the AB Credit Union prefer that Travelers not employ such incorporation by reference, Travelers will file an amended counterclaim that alleges, in detail, the coverage positions being incorporated below from its affirmative defenses.

### PARTIES, JURISDICTION, AND VENUE

3. Travelers Property is a Connecticut corporation and maintains its principal place of business in Hartford, Connecticut.  It is a citizen of Connecticut for the purposes of diversity jurisdiction.

4. Charter Oak is a Connecticut corporation and maintains its principal place of business in Hartford, Connecticut.  It is a citizen of Connecticut for the purposes of diversity jurisdiction.

5. The AB Credit Union is a Missouri chartered credit union and maintains its principal place of business in St. Louis, Missouri.  It is a citizen of Missouri for the purposes of diversity jurisdiction.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) and 1441 because this case involves a controversy between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, as measured by the value of the AB Credit Union's right to defense and indemnity for the alluded-to potential claims.

7.     This Court has personal jurisdiction over the AB Credit Union, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## THE POLICIES

8.     Travelers issued the following insurance policies to the AB Credit Union:

a.     Charter Oak Policy No. 630-3E389749-COF-14, policy period April 1, 2014 through April 1, 2015 (hereinafter, the "2014-15 Primary Policy," a copy of which attached hereto and incorporated by reference as Exhibit A);

b.     Charter Oak Policy No. 630-3E389749-COF-15, policy period April 1, 2015 through April 1, 2016 (hereinafter, the "2015-16 Primary Policy," a copy of which is attached hereto and incorporated by reference as Exhibit B);

c.     Charter Oak Policy No. 630-3E389749-COF-16, policy period April 1, 2016 through April 1, 2017 (hereinafter, the "2016-17 Primary Policy," a copy of which is attached hereto and incorporated by reference as Exhibit C);[4]

d.     Travelers Property Policy No. HSM-CUP-3E389749-TIL-14, policy period April 1, 2014 through April 1, 2015 (hereinafter, the "2014-15 Umbrella Policy," a copy of which is attached hereto and incorporated by reference as Exhibit D);

e.     Travelers Property Policy No. HSM-CUP-3E389749-TIL-15, policy period April 1, 2015 through April 1, 2016 (hereinafter, the "2015-16 Umbrella Policy," a copy of which is attached hereto and incorporated by reference as Exhibit F); and

f.     Travelers Property Policy No. HSM-CUP-3E389749-TIL-16, policy period April 1, 2016 through April 1, 2017 (hereinafter, the "2016-17 Umbrella Policy," a

---

[4] The Charter Oak policies are sometimes referred to collectively as the "Primary Policies."

copy of which is attached hereto and incorporated by reference as Exhibit F).[5]

## A JUSTICIABLE CONTROVERSY EXISTS

9.      In a class action pending in the Circuit Court of the City of Saint Louis, Missouri as cause number 1522-AC09263, and later changed to 1522-AC09263-01 (the "Underlying Suit"), the AB Credit Union is alleged to have engaged in an unlawful and deceptive pattern of wrongdoing regarding collection (including collection of alleged deficiencies), enforcement, repossession, and disposition of collateral by a now-certified class of borrowers.

10.      Although the AB Credit Union and the class have settled the Underlying Suit, the AB Credit Union maintains there may be some other group of additional borrowers whose potential claims are not resolved by the settlement and whom could still bring claims (hereinafter, the "Future Claims").

11.      Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 6 – No Bodily Injury above, and states that any potential for coverage for the Future Claims is barred, estopped, and otherwise precluded to the extent they do not seek damages because of  "bodily injury" in the Primary Policies or the Umbrella Policies.

12.      Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 7 – No Property Damage  above, and states that any potential coverage for the Future Claims is barred, estopped, and otherwise precluded to the extent  they do not seek damages because of "property damage" caused by an "occurrence" under the Primary Policies or the Umbrella Policies.

13.      Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 8 – No Bodily Injury or Property Damage Caused by an Occurrence

---

[5] The Travelers Property policies are sometimes referred to collectively as the "Umbrella Policies."

above, and states that any potential coverage for the Future Claims is barred, estopped, and otherwise precluded to the extent they do not seek damages because of "bodily injury" or "property damage" caused by an "occurrence" under the Primary Policies or the Umbrella Policies.

14.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 9 – "Expected or Intended Injury" Exclusion, and hereby states that even if the Future Claims sought damages  because "bodily injury" or "property damage" caused by an "occurrence," coverage would still be barred, estopped, and otherwise precluded by the "expected or intended injury" exclusion.

15.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 10 – "Care, Custody, or Control" Exclusion, and hereby states that even if the Future Claims qualified as "property damage" caused by an "occurrence," coverage would still be barred, estopped, and otherwise precluded by the "care, custody, or control" exclusion.

16.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 11 – Property Damage Occurring Outside Travelers' Policy Periods, and hereby states that even if the Future Claims qualified as "bodily injury" or "property damage" caused by an "occurrence," no coverage would be available for any damages because of "bodily injury" or  "property damage" outside the policy period" proviso.

17.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 12 – No Advertising Injury, and hereby states that any potential coverage for the Future Claims is barred, estopped, and otherwise precluded to the extent they do not seek damages because of  "advertising injury" as defined in the Primary Policies or the Umbrella Policies.

18.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 13 – The Financial Services Exclusion, and hereby states that any potential coverage for the Future Claims is barred, estopped, and otherwise precluded to the extent the Future Claims seek damages barred by the Financial Services exclusion, which was added by endorsement to the each of Primary and Umbrella Policies.

19.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 14 – The "Knowing Violation of Rights of Another" Exclusion, and hereby states that even if the Future Claims sought damages because of  "advertising injury" or "personal injury" not precluded by the Financial Services exclusion, coverage could be barred or restricted to the extent such damages were excluded by the "Knowing Violation of Rights of Another" exclusion.

20.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 15 – The "Material Published with Knowledge of Falsity" Exclusion, and hereby states that even if the Future Claims qualified as "advertising injury" or "personal injury" not precluded by the Financial Services exclusion, coverage could be barred or restricted to the extent such damages were excluded by the "Material Published with Knowledge of Falsity" exclusion.

21.     Travelers hereby incorporates by reference its allegations as set forth in its Affirmative Defense No. 16 – The "Material Published Prior to Policy Period" Exclusion, and hereby states that even if the Future Claims qualified as "advertising injury" or "personal injury" not precluded by the Financial Services exclusion, coverage could be barred or restricted to the extent such damages were excluded by the "Material Published Prior to Policy Period" exclusion.

22.     Travelers lacks an adequate remedy at law in part because, in the absence of declaratory relief, it would be uncertain of whether it has a duty to defend the AB Credit Union with respect to the Future Claims.

23.     Travelers also lacks an adequate remedy at law because, in the absence of declaratory relief, the Future Claims could be brought against the AB Credit Union in potentially multiple jurisdictions across the country, forcing Travelers to revisit the same coverage issues now at issue repeatedly and potentially in multiple jurisdictions at indeterminate points in time.

24.     Travelers also lacks an adequate remedy at law because, in the absence of declaratory relief in this proceeding, it appears that the AB Credit Union anticipates the possibility of further, redundant disputes over the same coverage issues raised herein.

25.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth the rights, obligations, and liabilities that exist between the parties in connection with the Future Claims.

26.     Declaratory judgment is also the most efficient method for the resolution of the disputes still remaining.

WHEREFORE, Defendants/Counterclaim Plaintiffs respectfully request that the Court enter judgment:

A.     Declaring that The Charter Oak Fire Insurance Company does not have any duty under any policy of insurance to defend Anheuser Busch Employees' Credit Union in connection with the Future Claims;

B.     Declaring that Travelers Property Casualty Company of America does not have any duty under any policy of insurance to defend Anheuser Busch Employees' Credit Union in connection with the Future Claims;

C.     Awarding Defendants/Counterclaim Plaintiffs their attorneys' fees, costs, and expenses incurred herein and such other and further monetary relief just and proper under the circumstances to the maximum extent allowed by law; and

D.     Awarding Defendants/Counterclaim Plaintiffs such other and further non-monetary relief as the Court deems just and proper under the circumstances

Respectfully submitted,

ARMSTRONG TEASDALE LLP

By:   _/s/ Patrick J. Kenny_____
     Patrick J. Kenny          38032MO
     Jonathan R. Shulan     65426MO
     7700 Forsyth Blvd., Suite 1800
     St. Louis, Missouri 63105
     Telephone:  314.621.5070
     Fax:  314.621.5065
     pkenny@armstrongteasdale.com
     jshulan@armstrongteasdale.com

*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2018, the foregoing was filed using the Court's

electronic filing system, which shall serve the following counsel of record:

David E. Larson
MARTIN, PRINGLE, OLIVER, WALLACE
& BAUER, L.L.P.
One Main Plaza
4435 Main Street, Suite 920
Kansas City, MO 64111
(816) 753-6006
(816) 502-7898 fax
delarson@martinpringle.com

*Attorneys for Plaintiff*

　　　　　　　　　　　　　　　　　　*/s/ Patrick J. Kenny*
　　　　　　　　　　　　　　　　　　　　Attorney for Defendants